[No. S011151. Sept. 6, 1990.]

ARASIMO SETTEMO LUCIDO, Petitioner, v.
THE SUPERIOR COURT OF MENDOCINO COUNTY,
Respondent;
THE PEOPLE, Real Party in Interest.

336

COUNSEL

Richard L. Huff, under appointment by the Supreme Court, Ronald W. Brown, Public Defender, and Lu Ann Hughes, Assistant Public Defender, for Petitioner.

No appearance for Respondent.

John K. Van de Kamp, Attorney General, Steve White and Richard B. Iglehart, Chief Assistant Attorneys General, John H. Sugiyama, Assistant Attorney General, Stan M. Helfman, Christopher J. Wei and Edward P. O'Brien, Deputy Attorneys General, for Real Party in Interest.

Thomas W. Sneddon, Jr., District Attorney (Santa Barbara), and Gerald McC. Franklin, Deputy District Attorney, as Amici Curiae on behalf of Real Party in Interest.

OPINION

LUCAS, C. J.—In this case we decide whether the doctrine of collateral estoppel bars prosecution of petitioner Arasimo Settemo Lucido for indecent exposure (Pen. Code, § 314, subd. 1; further statutory references are to this code unless otherwise indicated). At a probation revocation hearing conducted prior to a criminal trial based on the same underlying conduct, the justice court found that the People failed to prove a violation of probation based on the alleged offense. The People seek review of the Court of Appeal judgment ordering the issuance of a peremptory writ of mandate directing the superior court to dismiss the indecent exposure charge on collateral estoppel grounds.

We reverse the Court of Appeal judgment. ▮ Although traditional threshold requirements for applying collateral estoppel may be satisfied in this case, we must also determine whether the doctrine's application serves the fundamental principles underlying it. Because public policy requires that ultimate determinations of criminal guilt and innocence not be made at probation revocation hearings, barring relitigation of issues at trial will not preserve the integrity of the judicial system. In addition, precluding such relitigation is not needed to protect petitioner from "vexatious" litigation. For these reasons, we do not apply collateral estoppel in this case.

I. FACTS

In January 1988, petitioner was convicted of indecent exposure (§ 314, subd. 1) and carrying a loaded firearm in a public place (§ 12031). The

court sentenced him to 36 months' probation, subject to conditions that he obey all laws and refrain from using or possessing illegal drugs. In August, he was charged with a new count of indecent exposure, and shortly thereafter his probation officer informed the justice court (Little Lake Judicial District, Mendocino County) that the incident constituted a violation of his probation. ■ ■ ■ ■ The court remanded petitioner to custody and set bail.[1] On petitioner's motion the court continued a revocation hearing until early September.

On the day of the revocation hearing, petitioner's probation officer recommended that probation also be revoked on an independent ground: violation of the condition that petitioner not use illegal drugs. Urine tests performed in August showed positive results for cannabinoid, indicating petitioner had used marijuana. Petitioner admitted violating the no-drug-use condition. Although this violation alone constituted sufficient ground for revocation of probation (see § 1203.2 [court may revoke probation if probationer "has violated any of the conditions of his probation"]), the revocation hearing proceeded, with the indecent exposure allegation the only contested issue. The district attorney and petitioner each introduced evidence and called witnesses,[2] but no hearing record was kept. At the conclusion of the hearing, the court held revocation was warranted "based only upon [petitioner's] continuing use of marijuana, and not based upon the new indecent

---

[1] In so acting, the court summarily revoked probation. It possesses discretion to do so "at any time when the ends of justice will be subserved thereby. . . ." (§ 1203.3, subd. (a).) Although due process requires a hearing when probation is revoked (§ 1203.3, subd. (c)), the hearing need not precede revocation. (*People* v. *Hawkins* (1975) 44 Cal.App.3d 958 [119 Cal.Rptr. 54] [hearing must take place before expiration of "undue time" following revocation].) Revocation undertaken in this manner takes effect prior to the hearing. (§ 1203.3, subd. (c) ["The purpose of that hearing or hearings is not to revoke probation, as the revocation has occurred as a matter of law . . . ., but rather to afford the defendant an opportunity to require the prosecution to establish that the alleged violation did in fact occur and to justify the revocation."].) In the interim, the probationer may be placed in custody. (*People* v. *Coleman* (1975) 13 Cal.3d 867, 894 [120 Cal.Rptr. 384, 533 P.2d 1024] ["Usually a judicial determination of probable cause precedes the arrest of a probationer for violations of the conditions of probation, and the formal revocation hearing . . . occurs relatively soon after the probationer has been deprived of his conditional liberty."].)

[2] Five people allegedly saw petitioner indecently expose himself: Candace Mae Silva, her two-year-old son, and three children between the ages of six and ten. Of these witnesses, the People called only Mrs. Silva to testify at the revocation hearing. In their petition for review, the People state that because they did not present their entire case at the hearing, collateral estoppel should not apply, particularly in light of the fact that the reserved witnesses were children, whom public policy protects from the unnecessary pressure of appearing as witnesses. It appears that the People could have presented more evidence had they wished to; at the preliminary hearing on the criminal charge, they expressly stated their intention to call each child witness at trial. The significance of this fact, however, is debatable; the important question, at least for threshold purposes, is whether the People had the *opportunity* to present their entire case at the revocation hearing, not whether they availed themselves of the opportunity. (See *People* v. *Sims* (1982) 32 Cal.3d 468, 481-482 [186 Cal.Rptr. 77, 651 P.2d 321].)

exposure charges." It simultaneously reinstated probation and extended it 30 days. The court's findings stated, "clear and convincing evidence was not produced by the prosecution to establish that defendant committed a violation of Penal Code section 314(1) on June 23, 1988. Accordingly, defendant's probation is not violated on this ground."

Subsequently, petitioner moved to dismiss the new criminal charge on the ground that relitigation of the indecent exposure issue was collaterally estopped by the revocation hearing decision. After the superior court denied the motion, the Court of Appeal, by peremptory writ, directed it to dismiss the information on collateral estoppel grounds. We granted the People's petition for review.

## II. DISCUSSION

■ Collateral estoppel precludes relitigation of issues argued and decided in prior proceedings.[3] (*Teitelbaum Furs, Inc.* v. *Dominion Ins. Co., Ltd.* (1962) 58 Cal.2d 601, 604 [25 Cal.Rptr. 559, 375 P.2d 439].) Traditionally, we have applied the doctrine only if several threshold requirements are fulfilled. First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding. (*Sims, supra,* 32 Cal.3d at p. 484; *People* v. *Taylor* (1974) 12 Cal.3d 686, 691 [117 Cal.Rptr. 70, 527 P.2d 622].) The party asserting collateral estoppel bears the burden of establishing these requirements. (See, e.g., *Vella* v. *Hudgins* (1977) 20 Cal.3d 251, 257 [142 Cal.Rptr. 414, 572 P.2d 28].)

Petitioner arguably has fulfilled the threshold requirements in this case. There is little doubt that the indecent exposure allegation was "actually litigated" and "finally decided" at the revocation hearing, or that the "same parties" raised the issue at the two proceedings. The parties each presented evidence and witnesses in support of their positions, and certainly had the opportunity to present full cases. (See *ante,* fn. 2; *Sims, supra,* 32 Cal.3d at

---

[3] The doctrine of collateral estoppel is one aspect of the concept of res judicata. In modern usage, however, the two terms have distinct meanings. The Restatement Second of Judgments, for example, describes collateral estoppel as "issue preclusion" and res judicata as "claim preclusion." (Rest.2d Judgments, § 27.) This case concerns only issue preclusion. The claims at stake in probation revocation hearings and criminal trials are different, even though the issue presented in the proceedings—in this case whether petitioner committed the crime of indecent exposure—may be the same.

pp. 481-482.) The revocation proceeding findings indicated final disposition of the indecent exposure allegations on the merits. The People could have appealed the probation decision (see § 1466, subd. (a)(6)), but declined to do so.[4] Because it was free from direct attack, the hearing decision was "final." (See *Sims, supra*, 32 Cal.3d at p. 486.) The "same parties" requirement is also fulfilled: the district attorney presented the case in favor of revocation at the hearing, and similarly sought to prosecute petitioner.

■ As to the "identical issue" requirement, we note that the two proceedings threaten petitioner with fundamentally different sanctions. This fact, however, is not dispositive. The "identical issue" requirement addresses whether "identical factual allegations" are at stake in the two proceedings, not whether the ultimate issues or dispositions are the same. (*Sims, supra*, 32 Cal.3d at p. 485.) The requirement is fulfilled in this case; in each proceeding, petitioner's alleged commission of indecent exposure was at issue.

■ The final threshold requirement is that the issue have been "necessarily decided" at the revocation hearing. Although resolution of the indecent exposure issue may not have been "necessary" to a decision to revoke petitioner's probation in light of the additional conceded violation, a holding that collateral estoppel does not apply for this reason would be inconsistent with our prior application of this requirement. The courts have previously required only that the issue not have been "entirely unnecessary" to the judgment in the initial proceeding. (See generally 7 Witkin, Cal. Procedure (3d ed. 1985) Judgment, § 268, p. 710, and cases cited therein; see also *Sims, supra*, 32 Cal.3d at pp. 484-485 [holding issue "necessarily decided" because determination of innocence by preponderance of evidence "necessarily" determines lack of proof beyond reasonable doubt].) This test has been met here. The justice court's ultimate order (revoking and reinstating probation on slightly modified conditions) was based on a conceded violation. A hearing was held on the disputed indecent exposure allegation even after this concession had been made. The fact that the matter proceeded to a contested hearing indicated that the parties anticipated the court would treat petitioner differently if it found he committed indecent exposure. Accordingly, its finding on this issue was not "entirely unnecessary" to the judgment modifying the terms of petitioner's probation.

■ Even assuming all the threshold requirements are satisfied, however, our analysis is not at an end. We have repeatedly looked to the public

---

[4] Because the decision—revoking probation—nominally favored the People, one may legitimately question whether the People had real incentive to appeal, particularly given their apparent assumption that they could seek more substantial sanctions by proceeding with a criminal prosecution. Nonetheless, the decision did affect "the substantial rights of the People" (see § 1466, subd. (a)(6)), because the disposition was more lenient than the modification sought by the People.

policies underlying the doctrine before concluding that collateral estoppel should be applied in a particular setting. (See, e.g., *Sims, supra*, 32 Cal.3d at p. 477 ["this court must consider whether the traditional requirements and policy reasons for applying collateral estoppel were satisfied by the facts of this case"].) As the United States Supreme Court has stated, "the rule of collateral estoppel in criminal cases is not to be applied with the hypertechnical and archaic approach of a nineteenth century pleading book, but with realism and rationality." (*Ashe* v. *Swenson* (1970) 397 U.S. 436, 444 [25 L.Ed.2d 469, 475, 90 S.Ct. 1189];[5] see also *Jackson* v. *City of Sacramento* (1981) 117 Cal.App.3d 596, 603 [172 Cal.Rptr. 826] ["collateral estoppel is not an inflexible, universally applicable principle; policy considerations may limit its use where the limitation on relitigation underpinnings of the doctrine are outweighed by other factors"].) ■ Accordingly, the public policies underlying collateral estoppel—preservation of the integrity of the judicial system, promotion of judicial economy, and protection of litigants from harassment by vexatious litigation—strongly influence whether its application in a particular circumstance would be fair to the parties and constitutes sound judicial policy. (*Taylor, supra*, 12 Cal.3d at pp. 695-697.)

The issue presented here was previously addressed by the Court of Appeal in *Chamblin* v. *Municipal Court* (1982) 130 Cal.App.3d 115 [181 Cal.Rptr. 636]. In *Chamblin,* the probationer was charged with several

[5] In *Ashe*, the United States Supreme Court addressed a constitutional aspect of collateral estoppel: preclusion of issues as an element of the prohibition on double jeopardy. This aspect of collateral estoppel is not raised in this case because jeopardy does not attach in probation revocation hearings, which do not constitute "trial" on a new criminal charge, result in "conviction," or integrally relate to "enforcement" of the criminal laws. (Cf. *Breed* v. *Jones* (1975) 421 U.S. 519 [44 L.Ed.2d 346, 95 S.Ct. 1779]; see also *In re Coughlin* (1976) 16 Cal.3d 52, 61 [127 Cal.Rptr. 337, 545 P.2d 249] [revocation hearing does not place probationer in jeopardy under *Breed*, because not "intended to authorize criminal punishment"].) The limited purpose of the revocation hearing is to determine whether the probationer is abiding by the conditions of his probation.

In *Grady* v. *Corbin* (1990) 495 U.S. __ [109 L.Ed.2d 548, 110 S.Ct. 2084], the United States Supreme Court held, under the double jeopardy clause, that an initial criminal prosecution for misdemeanor drunk driving precludes the People from prosecuting the defendant for assault and homicide relating to the same incident. In so holding, the court rejected arguments that "seemingly minor cases" should not carry double jeopardy effect. Rather, "the Double Jeopardy Clause bars any subsequent prosecution in which the government, to establish an essential element of an offense charged in that prosecution, will prove conduct that constitutes an offense for which the defendant has already been prosecuted." (*Id.* at p. __ [109 L.Ed.2d at p. 564].) To hold otherwise, the court reasoned, would "give the State an opportunity to rehearse its presentation of proof, thus increasing the risk of an erroneous conviction for one or more of the offenses charged." (*Id.* at p. __ [109 L.Ed.2d at p. 562].)

Nothing in *Grady* affects our analysis here. We agree with the high court that the "seemingly minor" nature of certain prosecutions does not affect double jeopardy analysis. Nor do we suggest that probation revocation hearings are "minor" in function or importance to the People and probationers. As is discussed at greater length below, however, probation revocation hearings are not criminal prosecutions and accordingly should not be given the effect thereof.

crimes, including driving under the influence of alcohol and without a license. At a probation revocation hearing, the People introduced evidence that Chamblin had made an illegal U-turn and resisted arrest after being chased by police. The evidence conflicted as to whether he was the driver of the car. The hearing judge stated that, in view of the factual conflict, he would find Chamblin was not the driver. At the same time, the judge revoked probation on the ground that, vehicle charges notwithstanding, Chamblin had resisted arrest and committed vandalism.

Chamblin subsequently moved to dismiss the Vehicle Code charges based on collateral estoppel. The trial court denied the motion and the Court of Appeal affirmed, holding that because probation revocation hearings utilize procedures less formal than those available in criminal trials, collateral estoppel should not preclude relitigation of the Vehicle Code charges: "The procedures and protections of a formal criminal trial, such as the rules of evidence and the right to a jury trial, belong to the People as well as to the defendant. These rights are simply not available in a probation revocation hearing. . . . The rule urged by appellant would have the effect of barring full and fair litigation of the question of a defendant's criminal guilt due to a less formal proceeding which involved entirely different purposes, policies, procedures and issues." (*Chamblin, supra,* 130 Cal.App.3d at p. 121.)

Shortly after *Chamblin* was decided, we decided *Sims, supra,* 32 Cal.3d 468. In *Sims,* we held collateral estoppel barred criminal prosecution of a recipient of aid to families with dependent children (AFDC) for welfare fraud after the state, in an administrative proceeding, failed to introduce sufficient evidence of fraud to warrant restitution of allegedly fraudulently procured funds. We concluded that all technical and policy requirements for applying collateral estoppel had been fulfilled (*Sims, supra,* 32 Cal.3d at p. 490), despite procedural differences between the two proceedings (*id.* at p. 477), and notwithstanding any right to jury trial the People might possess. (*Id.* at pp. 483-484, fn. 13.) In addition, we noted, the Legislature specifically intended the administrative hearing to precede criminal prosecution of welfare recipients, and to preclude it if no fraud was found at the hearing, because "[t]o hold otherwise, this court would have to ignore the safeguards afforded welfare recipients by the Legislature." (*Id.* at p. 489.)

The Court of Appeal in the present case concluded that *Chamblin* has been "nullified sub silentio" by *Sims.* Indeed, *Sims* holds that the lack of jury trial of contested factual issues at the administrative proceeding does not preclude application of collateral estoppel in a subsequent criminal prosecution. *Chamblin,* by contrast, emphasized the fact that, because the revocation hearing is conducted without a jury, application of the doctrine would be inappropriate.

Although *Chamblin* relies on factors we regarded as not controlling in *Sims,* the two cases do not necessarily conflict. In *Sims* we noted that the "particular and special circumstances" presented by the "unique statutory scheme" for resolution of welfare fraud strongly supported a holding that collateral estoppel should apply. (*Sims, supra,* 32 Cal.3d at pp. 489-490.) As noted above, the hearing in *Sims* was statutorily required to be held prior to any criminal action on the fraud (*id.* at p. 475, citing Welf. & Inst. Code, § 11483). This requirement suggested that the Legislature intended to afford some protection from criminal prosecution for welfare recipients, by virtue of their "minimal standard of living." This goal supported our conclusion that collateral estoppel preempted a criminal trial if fraud was not proved at the hearing. As we noted, "the unique statutory scheme set up by the Legislature establishes a policy in favor of resolving AFDC fraud cases outside the criminal justice system." (*Sims, supra,* 32 Cal.3d at p. 489.) This interest was not present in *Chamblin,* and is not present here.[6]

Courts in other jurisdictions are divided concerning whether collateral estoppel should bar prosecutions following the state's failure to obtain revocation of probation or parole[7] based on alleged crimes. (For cases holding that the doctrine does not apply, see *United States* v. *Miller* (6th Cir. 1986) 797 F.2d 336; *Green* v. *State* (Fla. 1985) 463 So.2d 1139; *People* v. *Fagan* (1984) 104 A.D.2d 252 [483 N.Y.S.2d 489], affd. (1985) 66 N.Y.2d 815 [498

---

[6] We acknowledge that *Chamblin* and *Sims* conflict as to the importance of the absence of a jury determination of factual issues at the former proceeding. As noted above, *Chamblin* emphasized this fact in holding that the People were not barred by collateral estoppel from prosecuting the probationer. *Sims,* by contrast, expressly stated that absence of a jury trial at a former proceeding does not prohibit application of collateral estoppel. In reaching this conclusion, *Sims* dismissed the contention that the People have an absolute constitutional right to a jury trial. Because in this case we do not reach the issue of whether the absence of a jury at the revocation hearing is significant for collateral estoppel purposes, we leave this issue for another day.

In regard to other procedural differences between proceedings, *Sims* merely states that an administrative hearing decision "may" be given collateral estoppel effect despite the fact that the hearing utilizes procedural rules different from criminal trials. (*Sims, supra,* 32 Cal.3d at p. 482.) As a general matter, we do not disagree with this proposition. The mere fact that two proceedings utilize different procedures does not alone foreclose the courts from applying collateral estoppel. As we note below, the proper focus is on substantive differences that integrally relate to the public policies underlying the doctrine.

[7] We include *parole* revocation cases in our analysis because the purpose and procedures involved in parole matters closely resemble those present in the probation context. (See, e.g., *Gagnon* v. *Scarpelli* (1973) 411 U.S. 778 [36 L.Ed.2d 656, 93 S.Ct. 1756] [applying same due process requirements to probation revocation hearings as those imposed on parole revocation proceedings in *Morrissey* v. *Brewer* (1972) 408 U.S. 471 (33 L.Ed.2d 484, 92 S.Ct. 2593)].) Although there are differences—for example, parole revocation is an administrative process and probation revocation a judicial one—we, like other courts that have addressed the issue, do not consider them material to whether collateral estoppel applies in a subsequent criminal prosecution. As *Sims, supra,* 32 Cal.3d at page 479 teaches, the doctrine may apply following administrative determinations, as long as they are "judicial" in nature.

N.Y.S.2d 335, 489 N.E.2d 222]; *State* v. *Williams* (1982) 131 Ariz. 211 [639 P.2d 1036]; *State* v. *Dupard* (1980) 93 Wn.2d 268 [609 P.2d 961]. For cases applying the doctrine, see *Ex Parte Tarver* (Tex.Crim.App. 1986) 725 S.W.2d 195; *State* v. *Bradley* (1981) 51 Ore.App. 569 [626 P.2d 403]; *People* v. *Kondo* (1977) 51 Ill.App.3d 874 [366 N.E.2d 990].)

Of the three cases holding that collateral estoppel applies in this situation, two (*Bradley* and *Tarver*) merit close consideration.[8] Both decisions focused on the fact that the role of the hearing judge in resolving contested issues of fact is identical to that of the jury at trial: because the revocation hearing judge makes express factual findings after full litigation of the issue sought to be precluded, collateral estoppel should bar the prosecution despite procedural and substantive differences between the trial and the hearing. (*Bradley, supra,* 626 P.2d at p. 406; *Tarver, supra,* 725 S.W.2d at p. 198.)

Most courts have rejected this analysis. One consideration underlies their reluctance to apply collateral estoppel in the situation presented here: doing so would undesirably alter the criminal trial process by permitting informal revocation determinations to displace the intended fact-finding function of the trial. For example, in *State* v. *Dupard, supra,* 609 P.2d 961, the Washington Supreme Court held collateral estoppel did not bar prosecution of a parolee for crimes of which a parole board had held the parolee "not guilty" in a revocation hearing. The court based its holding largely on the conclusion that the question whether the defendant had committed a new crime "is more appropriately addressed to the criminal justice system" than the informal parole revocation process. (*Id.* at p. 965.) Similarly, in *People* v. *Fagan, supra,* 483 N.Y.S.2d 489, the Appellate Division of the New York Supreme Court observed: "[T]he question of whether a new crime has been committed by a parolee should be properly addressed to the Criminal Justice System (e.g., formal prosecution in the context of the criminal action). . . . [M]atters within that system must be permitted to be there decided unhampered by parallel parole revocation proceedings." (*Id.* at p. 492.) On this basis, the court refused to apply collateral estoppel. The Sixth Circuit Court of Appeals reached the same conclusion in the context of probation revocation proceedings similar to those at issue here. (*United States* v. *Miller, supra,* 797 F.2d 336.)[9]

---

[8] The third, *People* v. *Kondo, supra,* 366 N.E.2d 990, rests largely on the decision of the Illinois Supreme Court in *People* v. *Grayson* (1974) 58 Ill.2d 260 [319 N.E.2d 43]. *Grayson* holds that acquittal in a criminal prosecution bars the state from seeking revocation of the defendant's probation, even though the burden of proof for revocation is lower than that for criminal guilt. (*Id.* at p. 45.) Because we have previously reached the opposite conclusion (see *In re Coughlin, supra,* 16 Cal.3d 52), *Kondo* provides little guidance in this case.

[9] One court has attempted to adapt or restructure the threshold requirements for collateral estoppel to facilitate nonapplication of the doctrine in the context presented here. In *State* v. *Williams, supra,* 639 P.2d 1036, the Arizona Supreme Court held collateral estoppel inapplicable because the probation revocation hearing did not result in a final "judgment." It

The theoretical underpinnings of these decisions reflect significant policy considerations. For reasons explained below, application of collateral estoppel under the circumstances presented here would ill serve the integrity of the criminal justice system as a whole, even in cases in which the first proceeding resulted in a final judgment addressing the issue sought to be barred from relitigation.

## A. Integrity of Judicial Determinations

Public confidence in the integrity of the judicial system is threatened whenever two tribunals render inconsistent verdicts. (*Taylor, supra,* 12 Cal.3d at pp. 695-696.) Undoubtedly, applying collateral estoppel in this case would eliminate the possibility of inconsistency between probation revocation and criminal trial determinations. Consistency, however, is not the sole measure of the integrity of judicial decisions. We must also consider whether eliminating potential inconsistency (by displacing full determination of factual issues in criminal trials) would undermine public confidence in the judicial system. As has the majority of courts in other jurisdictions, we conclude it would.

Probation revocation hearings and criminal trials serve different public interests, and different concerns may shape the People's pursuit of revocation and conviction. (See, e.g., *Gagnon v. Scarpelli, supra,* 411 U.S. at pp. 788-789 [36 L.Ed.2d at p. 665] ["there are critical differences between criminal trials and probation or parole revocation hearings, and both society and the probationer or parolee have stakes in preserving these differences"]; *United States v. Miller, supra,* 797 F.2d at p. 342 ["The government is not required to complete its entire investigation before seeking to revoke an individual's probation, nor would such a requirement be in society's best interest."].) These differences justify permitting a criminal prosecution to follow a revocation proceeding that results in a judgment adverse to the People.

 A probation revocation hearing assesses whether conditions relating to punishment for a prior crime have been violated so that probation

---

reached this conclusion by citing the definition of "judgment" contained in the Arizona Rules of Criminal Procedure: " 'the adjudication of the court . . . that the defendant is guilty or not guilty.' " (*Id.* at p. 1038, citing rule 26.1, Ariz. Rules of Crim. Proc.) Because revocation hearings do not determine criminal "guilt," the court reasoned, they cannot result in "judgments," and thus cannot be the basis for collateral estoppel. (*Williams, supra,* 639 P.2d at p. 1038.)

This reasoning is less than convincing. To be sure, probation revocation hearings do not result in criminal *judgments* determining guilt or innocence as to new crimes, but this does not mean they cannot result in equally valid determinations. Collateral estoppel, as distinguished from res judicata (see *ante,* fn. 3), bars relitigation of *issues* litigated and resolved in former proceedings. Because the determination of "guilt" in the criminal sense is exactly the *claim* concerned in the trial sought to be precluded, defining "judgment" to mean determination of guilt or innocence confuses collateral estoppel with res judicata whenever the latter proceeding is a criminal trial.

should be modifed or revoked; a criminal prosecution seeks conviction for wholly new offenses. (Cf. *Standlee* v. *Rhay* (9th Cir. 1977) 557 F.2d 1303, 1306-1307.) If the People prevail at the hearing, the result is not a new felony conviction (as it would be were they to prevail at trial on the indecent exposure charge in this case). Rather, if they prevail, the court's discretion is limited to modifying a previously imposed sentence or imposing a new sentence for an earlier conviction. (*People* v. *Buford* (1974) 42 Cal.App.3d 975, 985 [117 Cal.Rptr. 333] [revocation is within "sound discretion of the court"]; see generally 3 Witkin & Epstein, Cal. Criminal Law (2d ed. 1985) Punishment for Crime, § 1695, p. 2005.) ■ A revocation hearing arises as a continuing consequence of the probationer's original conviction; any sanction imposed at the hearing follows from that crime, not from the substance of new criminal allegations against the probationer. Indeed, because the hearing—despite its obvious importance to both probationer and People—neither threatens the probationer with the stigma of a new conviction nor with punishment other than that to which he was already exposed as a result of his earlier offense, it does not place the probationer in jeopardy. (*In re Coughlin, supra*, 16 Cal.3d at p. 61; *Chamblin* v. *Municipal Court, supra*, 130 Cal.App.3d at p. 119; *United States* v. *Miller, supra*, 797 F.2d at pp. 340-341; see also *Breed* v. *Jones, supra*, 421 U.S. at pp. 529-531 [44 L.Ed.2d at pp. 355-357].)

■ The fundamental role and responsibility of the hearing judge in a revocation proceeding is not to determine whether the probationer is guilty or innocent of a crime, but whether a violation of the terms of probation has occurred and, if so, whether it would be appropriate to allow the probationer to continue to retain his conditional liberty. (See, e.g., *People* v. *Hayko* (1970) 7 Cal.App.3d 604, 610 [86 Cal.Rptr. 726].) Because the limited nature of this inquiry may not involve or invoke presentation of all evidence bearing on the underlying factual allegations, the People's failure to satisfy the lower burden of proof at the revocation hearing does not necessarily amount to an acquittal or demonstrate an inability to meet the higher criminal standard of proof. (Cf. *United States* v. *Miller, supra*, 797 F.2d at p. 342.)

■ Given these distinctions between the revocation hearing and a criminal trial, application of collateral estoppel would not serve the public interest in holding probationers accountable for *both* violation of the terms of their probation and commission of newly alleged crimes.[10] (Cf. *In re Dennis B.* (1976) 18 Cal.3d 687, 696 [135 Cal.Rptr. 82, 557 P.2d 514]

---

[10] It is true that the People could avoid being collaterally estopped either by prosecuting first (and seeking revocation afterward) or by declining to seek revocation based on offenses for which they wish to prosecute. As in our previous cases, however, we refuse to mandate such a chronology. (See, e.g., *People* v. *Jasper* (1983) 33 Cal.3d 931, 935 [191 Cal.Rptr. 648, 663 P.2d 206].)

["undeniable state interest in prosecuting serious misdemeanors and felonies" must be balanced against degree of harassment caused by successive proceedings].) Preemption of trial of a new charge by a revocation decision designed to perform a wholly independent social and legal task would undermine the function of the criminal trial process as the intended forum for ultimate determinations as to guilt or innocence of newly alleged crimes. (See Cal. Const., art. I, § 14 ["Felonies shall be prosecuted as provided by law, either by indictment or, after examination and commitment by a magistrate, by information."]; cf. *People* v. *Fagan, supra*, 483 N.Y.S.2d at p. 492 ["the distinctions between the two proceedings should not be blurred and their objectives compromised by giving collateral estoppel effect to determinations at parole revocation proceedings"].)

In this respect, this case is similar to those in which we have held collateral estoppel inapplicable because of differences in the public interests served by former and subsequent proceedings. (See, e.g., *Vella* v. *Hudgins, supra*, 20 Cal.3d at p. 258 [resolution of factual issues at unreported unlawful detainer proceeding does not collaterally estop civil relitigation of issues]; *People* v. *Prewitt* (1959) 52 Cal.2d 330, 340 [341 P.2d 1], and cases cited therein [dismissal of information or indictment for lack of evidence "will not bar a trial based on a subsequent accusatory pleading charging the identical offense"].) The juxtaposition of the revocation hearing and a criminal trial is similar to that between a preliminary hearing and a subsequent trial. As here, the People's burden at the preliminary hearing is lower than that at the trial sought to be precluded. Nonetheless, the Legislature has provided that dismissal at the preliminary hearing does not bar the People from refiling the complaint for the same criminal charge. (See § 991, subd. (e).) Although no statutory provision addresses the preclusive effect of probation revocation hearings, the considerations discussed above warrant the same result in this case.

It is true, of course, that we have at times applied collateral estoppel principles to preclude criminal trials. (See, e.g., *Sims, supra*, 32 Cal.3d 468; *Taylor, supra*, 12 Cal.3d 686 [collateral estoppel applied to preclude retrial of accomplice under theory of vicarious liability, when principal acquitted in former trial].) We have done so, however, only when compelling public policy considerations outweighed the need for determinations of guilt and innocence to be made in the usual criminal trial setting.

In *Sims*, as noted above, we applied collateral estoppel partly on the ground that the "unique statutory scheme" at issue was *intended* to essentially resolve issues of criminal guilt and innocence in regard to welfare fraud. (*Sims, supra*, 32 Cal.3d at pp. 483, fn. 13 & 489-490.) Our concern here about the overall integrity of the criminal trial process as the intended forum for determinations of guilt and innocence was less at issue in *Sims*,

because the legislative determination about the relationship between the hearing and the criminal trial process deemphasized the role of criminal trials in the overall scheme for resolution of welfare fraud cases. In the present case, by contrast, the Legislature has not indicated a preference that questions of guilt or innocence on criminal charges be litigated in revocation hearings rather than at trial. For this reason, we decline in this context to follow *Sims*'s conclusion that preservation of the integrity of either the judicial system as a whole or the hearing process itself warrants application of collateral estoppel.[11] Similarly, we decline to attribute as much weight in this case as we did in *Sims* to a need to prevent inconsistent judicial determinations.

In *Taylor,* failure to apply collateral estoppel would have resulted in a fundamentally unfair and logically inconsistent result: conviction of a vicariously liable codefendant even though the alleged principal had been acquitted in an earlier trial on the ground that his conduct did not support a finding of implied malice. (*Taylor, supra,* 12 Cal.3d at p. 696 ["Few things undermine the layman's faith in the integrity of our legal institutions more than the specter of a system which results in a person being punished for the acts of another, when the actor himself under identical charges had been previously exonerated from responsibility for those very acts."].) Unlike *Taylor,* in which the outcomes of two proceedings of equal status were in potential conflict, no fundamental unfairness to the probationer would result from a jury verdict contrary to a revocation decision. The differences between revocation hearings and criminal trials outweigh whatever adverse effect inconsistent factual determinations would have on the integrity of the judicial system.

## B. *Judicial Economy*

In the view of the Court of Appeal, applying collateral estoppel would promote judicial economy in two ways. First, it would reduce the number of court proceedings by precluding prosecution of issues determined adversely to the People at the revocation hearing. Second, by increasing the already high stakes of the revocation hearing, it might encourage the People to prosecute first. A conviction at trial precludes relitigation of an issue decided adversely to the defendant, and thus eliminates the need for a separate revocation hearing. (*Morrissey, supra,* 408 U.S. at p. 490 [33 L.Ed.2d at pp. 499-500].)

---

[11] Although our principal focus is on the integrity of the judicial system as a whole, we do not ignore the integrity of the revocation hearing and decision resulting therefrom. We agree with *Sims* that allowing relitigation of issues determined at a hearing will cast some doubt on the conclusiveness of hearing decisions. We believe, however, that this concern is outweighed by the importance of preserving the criminal trial process as the proper forum for determinations of criminal guilt and innocence.

These considerations are outweighed by the factors discussed above. Whatever the efficiencies of applying collateral estoppel in this case, they pale before the importance of preserving the criminal trial process as the exclusive forum for determining guilt or innocence as to new crimes.

## C. *Vexatious Litigation*

Application of collateral estoppel in this case would prevent petitioner from being subjected to consecutive proceedings raising the same factual allegations. To this extent, as noted above, it would eliminate repetitive litigation. ■ The essence of vexatiousness, however, is not mere repetition. Rather, it is harassment through baseless or unjustified litigation. (See, e.g., *Taylor, supra*, 12 Cal.3d at p. 695 [policy underlying collateral estoppel is prevention of harassment through vexatious litigation].) Petitioner does not assert that the criminal proceedings in this case are intended to harass. The public has a legitimate expectation that a person once found guilty of a crime may both be held to the terms of his probation and (if deemed appropriate by the prosecution) tried anew for any offenses alleged to have been committed during the probationary period. For this reason, it is neither vexatious nor unfair for a probationer to be subjected to both a revocation hearing and a criminal trial. The People's failure to prevail at the revocation hearing does not alone transform the otherwise permissible subsequent trial into harassment.

We have previously adopted evidentiary rules that significantly protect probationers from prejudice caused by the juxtaposition of revocation hearings and criminal trials. Most important, the probationer's testimony at the revocation hearing is inadmissible at a subsequent criminal trial. (*Coleman, supra*, 13 Cal.3d 867; *People* v. *Weaver* (1985) 39 Cal.3d 654, 659 [217 Cal.Rptr. 245, 703 P.2d 1139] [*Coleman* exclusionary rule survives adoption of Cal. Const., art. I, § 28, subd. (d)].) This safeguard guarantees the probationer the ability to present a full case at the hearing without running the risk of prejudicing his defense at a subsequent trial. ■ As such, the trial will not be vexatious, even if it requires determination of the same issue litigated at the hearing. Protection of defendants faced with both revocation and prosecution does not warrant application of collateral estoppel in this case.

### III. DISPOSITION

We conclude collateral estoppel does not bar the People from prosecuting petitioner for indecent exposure, even though the justice court found the People failed to present clear and convincing evidence of the crime at petitioner's probation revocation hearing. Applying collateral estoppel

would unduly expand the designated function of the revocation hearing and undermine the public interest in determining criminal guilt and innocence at criminal trials.

Accordingly, the judgment of the Court of Appeal is reversed. We direct that court to deny the petition for writ of mandate.

Panelli, J., Eagleson, J., Kennard, J., and Arabian, J., concurred.

**EAGLESON, J., Concurring.**—I concur in the judgment and much of the reasoning of the majority. I write separately only to emphasize that, in the context of probation revocation proceedings, public policy would not be served by application of collateral estoppel. Contrary to the assumption inherent in the dissenting opinions, the officer who bears the responsibility for prosecution of the new charge or charges is not necessarily the officer who initiates and prosecutes the probation revocation proceedings. Although the alleged commission of an offense by a probationer may form the basis of both the revocation proceeding and the new criminal prosecution, the two proceedings may be conducted in different courts and in different counties.

A decision to seek revocation of probation may be made by a probation officer without consultation with the prosecutor of the new charge, and may be undertaken before the prosecutor has completed the investigation and marshalled all available evidence. (See Pen. Code, § 1203.2.) The prosecutor may have no control over either the extent of evidence or the manner in which evidence is presented at a probation revocation hearing. The assumption underlying the dissenting opinions, that a monolithic "state" prosecutes both the probation revocation proceeding and the new criminal charge, and thus will be given a second opportunity to prove the case under a lower standard of proof, ignores this reality.[1]

Recognition that different officers, with varying ability and incentive to present the strongest possible case, bear responsibility for the two

---

[1] The majority conclude that in this case the People did have the opportunity to present their entire case at the revocation hearing. The question we address, however, is broader than whether collateral estoppel should be applied in this case based on that fact. We decide here whether, as a matter of policy, the courts of this state must apply collateral estoppel to bar prosecution after an unsuccessful attempt to establish the commission of the offense in a probation revocation proceeding.

For purposes of the multiple prosecution bar of Penal Code, section 654, the court, in an opinion authored by Justice Mosk, recognized that it would be unreasonable to treat the state as a monolith and to charge the prosecutor of a felony or serious misdemeanor with knowledge that another officer was pursuing an infraction arising out of the same incident. (See *In re Dennis B.* (1976) 18 Cal.3d 687, 696 [135 Cal.Rptr. 82, 557 P.2d 514].) I see no reason to adopt a different approach here.

proceedings, leads me to conclude that public policy would not be served by application of collateral estoppel.[2]

**MOSK, J.**—I dissent. Both the technical prerequisites for application of collateral estoppel and the policies underlying that doctrine mandate dismissal of the criminal charges against this petitioner.

The crucial factor is the People's exercise of their control over the sequence of probation revocation and criminal proceedings in this case. Thus I would hold that when, as here, the People choose to pursue probation revocation first, and the court finds at the revocation hearing that there is insufficient evidence the probationer committed the alleged crime, collateral estoppel, which precludes relitigation of issues argued and decided in prior proceedings (*Teitelbaum Furs, Inc.* v. *Dominion Ins. Co., Ltd.* (1962) 58 Cal.2d 601, 604 [25 Cal.Rptr. 559, 375 P.2d 439]), should bar the People from relitigating the identical question of guilt at a subsequent criminal trial. I would, therefore, affirm the order of the Court of Appeal directing respondent superior court to grant petitioner's motion to dismiss the indecent exposure charge on collateral estoppel grounds.

The facts are not in dispute. At the revocation hearing (1) the only contested issue was the indecent exposure allegation; (2) the district attorney and petitioner both introduced evidence and called witnesses; and (3) the court ruled that revocation was not warranted on the basis of the indecent exposure allegation because no "clear and convincing evidence" to support that charge was produced by the prosecution.

On these facts, I agree with the concession by the majority that the traditional prerequisites for application of collateral estoppel are met. First, the "ultimate issue of fact" to be litigated at the criminal trial is identical to that decided at the revocation proceeding. (See *Ashe* v. *Swenson* (1970) 397 U.S. 436, 443 [25 L.Ed.2d 469, 475, 90 S.Ct. 1189]; *People* v. *Sims* (1982) 32 Cal.3d 468, 48 [186 Cal.Rptr. 77, 651 P.2d 321]5 ["identical factual allegation"] [hereafter *Sims*].)[1]

---

[2] Having reached this conclusion, I need not consider, beyond noting doubts regarding the dictum in *People* v. *Sims* (1982) 32 Cal.3d 468, 483, footnote 13 [186 Cal.Rptr. 77, 651 P.2d 321], suggesting that application of collateral estoppel would not conflict with the right to jury trial apparently granted to both the People and the defendant by article I, section 16, of the California Constitution.

[1] I take this opportunity to note that the majority read *Sims, supra,* 32 Cal.3d 468, in an unreasonably narrow manner. (Maj. opn., *ante,* at pp. 345, 349-350.) We stated in *Sims* that our conclusion was warranted by three factors: (1) the technical prerequisites for applying collateral estoppel to the fair hearing decision were satisfied; (2) the traditional policies underlying application of the doctrine would be furthered by its application; and (3) the unique statutory scheme in that case called for resolution outside the criminal justice system. We did not rely

Second, the indecent exposure issue was "actually litigated": both the district attorney and petitioner availed themselves of the opportunity to present evidence and to argue the merits. Although the People claim they did not present their entire case and, thus, collateral estoppel should not apply, it is enough that the People had "notice of the hearing as well as the opportunity and incentive to present [their] case . . . . The People cannot now take advantage of the fact that [they] avoided [their] litigation responsibilities and chose not to present evidence at the prior proceeding." (*Sims, supra,* 32 Cal.3d at pp. 481-482.)

The majority agree that the relevant issue is "whether the People had the *opportunity* to present their entire case at the revocation hearing, not whether they availed themselves of the opportunity." (Maj. opn., *ante,* at p. 340, fn. 2, original italics.) Because they do not dispute the governing law, therefore, I question why the majority take note of the People's failure to call child witnesses. Regardless of the extent to which the People actually presented evidence, they did have the opportunity to present their entire case against petitioner. For collateral estoppel purposes, what is significant is that petitioner, as a result of the choice made by the People, was forced to assume the burdens, psychological and evidentiary, of defending himself against the indecent exposure allegation at the revocation hearing.

Third, the ultimate issue of fact was "necessarily decided," as that phrase is interpreted in our jurisprudence. (7 Witkin, Cal. Procedure (3d ed. 1985) Judgment, § 268, p. 710 [issue must not have been "entirely unnecessary" to the judgment].) Even the most cursory examination of the facts shows that a determination of whether petitioner committed the alleged act of indecent exposure was necessary to the court's decision whether to revoke petitioner's probation. Although petitioner admitted violating the no-drug-use condition of his probation, the court nevertheless held the revocation hearing; the sole contested issue was the indecent exposure allegation. At the conclusion of the hearing, the court ruled that revocation was warranted "based only upon [petitioner's] continuing use of marijuana, and not based upon the new indecent exposure charges." Subsequently, the court filed its formal findings and order, in which it declared that the People had not produced clear and convincing evidence that petitioner committed the alleged violation of Penal Code section 314, subdivision 1: "Accordingly, [petitioner's] probation is not violated on this ground."

The fourth requirement, that the decision in the former proceeding be "final" and on the merits, also is satisfied: as the majority recognize, the

on the uniqueness of the statutory scheme to the extent the majority suggest. (*Sims, supra,* 32 Cal.3d at pp. 488, 490.) Although the majority claim they do not question the continuing vitality of *Sims,* I do not believe they can hold as they do without openly rejecting the stare decisis effect of *Sims.*

findings of the court at the revocation hearing amounted to final disposition of the indecent exposure allegations on the merits, and the People failed to take any direct action to overturn that judgment. (See Pen. Code, § 1466, subd. (a)(6).)

Finally, it is patently obvious that the parties in the criminal trial are the same as in the revocation hearing: the district attorney sought revocation of petitioner's probation and now is seeking to prosecute him in the criminal trial. In sum, all the prerequisites for application of collateral estoppel are satisfied in this case.

The majority are correct, however, that fulfillment of the technical requirements does not invariably guarantee that a subsequent proceeding should be barred: we also must examine whether application of collateral estoppel to the facts before us will further the policies underlying that doctrine. As will appear, I conclude those policies, as they are identified by the majority and by this court in previous cases, also demand that the criminal charges against petitioner be dismissed.

I begin with the settled rule that in deciding whether a proceeding is precluded by collateral estoppel, we must "balance the need to limit litigation against the right of a fair adversary proceeding in which a party may fully present his case." (*People* v. *Taylor* (1974) 12 Cal.3d 686, 695 [117 Cal.Rptr. 70, 527 P.2d 622] [hereafter *Taylor*].) In this regard, there is no question the People availed themselves of their opportunity to present their case against petitioner by calling witnesses and presenting facts at the probation revocation hearing. In so doing, the district attorney litigated only one issue: the alleged incident of indecent exposure. Collateral estoppel demands that the People not be given two such opportunities at the expense of the rights of a criminal defendant. (See *Ashe* v. *Swenson, supra,* 397 U.S. at pp. 445-446 [25 L.Ed.2d at pp. 476-477] ["For whatever else [collateral estoppel] may embrace, [citation], it surely protects a man who has been acquitted from having to 'run the gauntlet' a second time."].)

We traditionally recognize three public policies underlying collateral estoppel, and each favors its application here. First, public confidence in the integrity of the judicial system is threatened when two tribunals render inconsistent judgments on the same facts involving the same parties. (*Taylor, supra,* 12 Cal.3d at pp. 695-696.) When decisions are inconsistent, individuals have little incentive to rely on judicial action. (See *Allen* v. *McCurry* (1980) 449 U.S. 90, 94 [66 L.Ed.2d 308, 313, 101 S.Ct. 411].) Unfortunately, the majority discourage such reliance by refusing to apply collateral estoppel to the facts of this case.

The majority claim that removing full determination of factual issues from the criminal trial setting would equally undermine public confidence in the criminal justice system. As I demonstrate below, however, such a claim accords insufficient deference to the due process rights of criminal defendants. In *Sims*, we were concerned that if a criminal trial were allowed to proceed and were ultimately to result in the welfare fraud conviction of an individual who had been proved innocent at an earlier Department of Social Services fair hearing, "not only the integrity of the judicial system, but also the integrity of the fair hearing process will be called into question." (*Sims, supra,* 32 Cal.3d at p. 488.)

Surely concern for the integrity of the judicial system is even greater in the case at bar: whereas the first hearing in *Sims* was merely an administrative "fair hearing," here both the revocation hearing and the criminal trial are court proceedings brought by the prosecutor. Regardless of the difference in function between a revocation proceeding and a criminal trial, the People undeniably litigated the sole disputed issue at the former. Collateral estoppel is intended to prevent just such repetition, which not only results in inconsistent judgments but allows the People, through sheer perseverance, to litigate and litigate until they, in their view, "get it right."

The second policy underlying collateral estoppel, interest in judicial economy, also is furthered when we forbid repetitive prosecution of a criminal defendant for the same alleged crime. This is true especially when, as here, the People fail at a revocation hearing to produce even "clear and convincing evidence" that the probationer violated the terms of his probation, yet then seek to demonstrate his guilt at trial under the stricter "beyond a reasonable doubt" standard. The prosecution must be held to its failure to successfully prove its case against a probationer under the more lenient standard.

The majority, however, conclude that any interests in judicial efficiency "pale before the importance of preserving the criminal trial process as the exclusive forum for determining guilt or innocence as to new crimes." (Maj. opn., *ante,* at p. 351.) While one cannot dispute the importance of criminal trials for determining guilt or innocence, I believe the majority needlessly threaten the due process rights of criminal defendants. If preserving the criminal trial as the exclusive forum for determining guilt or innocence is of transcendent importance—and often it is—the district attorney should proceed to such trial first, *before* he compels a defendant to defend himself against precisely the same factual allegations at an earlier revocation hearing. Once the People unilaterally decide to seek probation revocation on the

criminal allegations before proceeding to trial, however, they should be bound by their failure to prove their allegations.[2]

Finally, consistent with our third traditional policy interest, application of collateral estoppel in this case would undeniably "provide repose by preventing a person from being harassed by vexatious litigation." (*Taylor, supra,* 12 Cal.3d at p. 695; *Sims, supra,* 32 Cal.3d at p. 489.) The majority claim that the "essence of vexatiousness" is "harassment through institution of baseless or unjustified litigation." (Maj. opn., *ante,* at p. 351.) In a similar context, however, we concluded that a person faced with consecutive major criminal trials for the same alleged act is "likely to suffer unnecessary anxiety and expense whether his plight is caused by intentional harassment by the district attorney's office or by its inadvertent failure to coordinate its prosecutorial efforts." (*In re Dennis B.* (1976) 18 Cal.3d 687, 694 [135 Cal.Rptr. 82, 557 P.2d 514].) Subsequently, in *Sims* we noted that the district attorney had an adequate opportunity at an administrative fair hearing, but failed to prove the defendant had fraudulently obtained welfare benefits. Accordingly, we held, to subject the defendant to a criminal proceeding "in which she must defend herself against the very same charges of misconduct would be manifestly unfair." (*Sims, supra,* 32 Cal.3d at p. 489.) While I do not suggest the district attorney's effort to relitigate the indecent exposure charge here is an attempt to "harass" petitioner, the repetitive nature of the criminal trial in this case is no less unfair than in *Sims.*

The majority choose not to follow *Sims* in the context of this issue because they "decline to attribute as much weight in this case as we did in *Sims* to a need to prevent inconsistent judicial determinations." (Maj. opn., *ante,* at p. 350.) I cannot agree with that curious conclusion. It is paradoxical that the majority thus limit *Sims,* and ignore its result, while claiming to affirm its vitality.

While the collateral estoppel doctrine applies equally in the civil and criminal contexts, the constitutional prohibition against double jeopardy demonstrates that we accord even greater protection against repetitive prosecution to criminal defendants. (See *Harris* v. *Washington* (1971) 404 U.S. 55, 56 [30 L.Ed.2d 212, 214-215, 92 S.Ct. 183] [collateral estoppel in

---

[2] In so concluding, I note that acquittal of a probationer at his criminal trial does not preclude later probation revocation. (See *In re Coughlin* (1976) 16 Cal.3d 52, 57-59 [127 Cal.Rptr. 337, 545 P.2d 249].) Probation revocation *after* acquittal at a criminal trial is acceptable because it lacks the repetitiveness I find so troubling in this case. First, the People must satisfy a relatively easier burden of proof at the revocation proceeding. Second, an individual's probation may be revoked even if he has not been found to have committed a crime. For example, a defendant may be acquitted of assault committed in a bar on the ground of self-defense, yet he may have violated terms of his probation by simply being in the bar.

criminal trials is an integral part of the protection against double jeopardy guaranteed by the Fifth Amendment]; *Benton* v. *Maryland* (1969) 395 U.S. 784 [23 L.Ed.2d 707, 89 S.Ct. 2056] [Fifth Amendment guaranty against double jeopardy enforceable against the states through the Fourteenth Amendment]; see also *United States* v. *Oppenheimer* (1916) 242 U.S. 85, 87 [61 L.Ed. 161, 164, 37 S.Ct. 68, 3 A.L.R. 516] [doctrine of res judicata applicable in criminal cases; "It cannot be that the safeguards of the person, so often and so rightly mentioned with solemn reverence, are less than those that protect from a liability in debt."].)

Although revocation hearings do not per se place a probationer in jeopardy, the policies underlying the constitutional prohibition against double jeopardy, just as those underlying collateral estoppel (see Note, *Statutory Implementation of Double Jeopardy Clauses: New Life for a Moribund Constitutional Guarantee* (1956) 65 Yale L.J. 339, 340, fn. 7), demand that we do not compel petitioner to establish his innocence only by disproving the same allegations in two successive proceedings. "The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him . . . to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." (*Green* v. *United States* (1957) 355 U.S. 184, 187-188 [2 L.Ed.2d 199, 204, 78 S.Ct. 221, 61 A.L.R.2d 1119].)

Indeed, the United States Supreme Court has recently expanded the protection accorded by the double jeopardy clause. In *Grady* v. *Corbin* (1990) 495 U.S. __, __ [109 L.Ed.2d 548, 564, 110 S.Ct. 2084], the court held that the double jeopardy clause bars "subsequent prosecution if, to establish an essential element of an offense charged in that prosecution, the government will prove conduct that constitutes an offense for which the defendant has already been prosecuted." In so holding, the court rejected the state's contention that to determine whether a subsequent prosecution is barred by the double jeopardy clause a court must be concerned only with whether each statute under which the defendant is to be prosecuted in successive proceedings requires "proof of a fact which the other does not." (*Blockburger* v. *United States* (1932) 284 U.S. 299, 304 [76 L.Ed. 306, 309, 52 S.Ct. 180].) The court refused to rely solely on the *Blockburger* rule because it addresses only one of the three protections embodied in the double jeopardy clause: protection against multiple punishments for the same offense. It does not, the court explained, adequately protect defendants from the burdens of successive prosecutions following acquittals or convictions. A court that is asked to rule on the applicability of the double jeopardy clause, the court concluded, should also be concerned with

whether multiple prosecutions will cause the defendant to suffer undue embarrassment, expense, or psychological insecurity, or afford the state, already possessed of superior resources, an opportunity to rehearse its presentation of proof, "thus increasing the risk of an erroneous conviction for one or more of the offenses charged." (*Grady* v. *Corbin, supra*, 495 U.S. __ at p. __ [109 L.Ed.2d at p. 562]; see also *United States* v. *Di Francesco* (1980) 449 U.S. 117, 128 [66 L.Ed.2d 328, 340, 101 S.Ct. 426] ["Implicit in [the prohibition against double jeopardy] is the thought that if the Government may reprosecute, it gains an advantage from what it learns at the first trial about the strengths of the defense case and the weaknesses of its own."].) Accordingly, the court held the "critical inquiry" is "what conduct the state will prove" in the second prosecution. (*Grady* v. *Corbin, supra*, 495 U.S. __ at p. __ [109 L.Ed.2d at p. 564].) The *Grady* court's concerns about the burdens imposed on defendants by multiple trials and the advantage garnered by the People when they repeatedly prosecute a defendant for the same conduct mirror the policies underlying the doctrine of collateral estoppel. The conclusion compelled by *Grady*, therefore, is that the People should not be allowed to relitigate the allegations of indecent exposure in this case.

Finally, application of collateral estoppel in the case at bar is consistent with the nature of the probation system. Probation is intended to protect society by reforming and rehabilitating convicted criminals. (*People* v. *Hainline* (1933) 219 Cal. 532, 534 [28 P.2d 16]; *United States* v. *Allen* (N.D.Cal. 1972) 349 F.Supp. 749, 753; Comment, *Revocation of Conditional Liberty—California and the Federal System* (1955) 28 So.Cal.L.Rev. 158, 158-160.) Revocation of probation similarly functions to protect society: if it is apparent that a rehabilitative effort is "imprudently prejudicing the safety of the community," probation may be revoked. (See *Gagnon* v. *Scarpelli* (1973) 411 U.S. 778, 785 [36 L.Ed.2d 656, 664, 93 S.Ct. 1756]; *Standlee* v. *Rhay* (9th Cir. 1977) 557 F.2d 1303, 1306; *In re Coughlin, supra*, 16 Cal.3d 52, 59.) In more basic terms, probation revocation functions to take a probationer "off the streets" once the People show he does not deserve the clemency offered by probation, i.e., probation revocation "protect[s] society from the backsliding criminal[;] to this end [Congress] gave the courts of the United States broad powers to cause him to be retaken and resentenced as if the boon of probation had never been offered to him." (*United States* v. *Smith* (E.D.Pa. 1943) 50 F.Supp. 464, 468.)

As we recognized in our unanimous opinion in *People* v. *Coleman* (1975) 13 Cal.3d 867 [120 Cal.Rptr. 384, 533 P.2d 1024] (hereafter *Coleman*), however, probation revocation is not necessary to keep a probationer "off the streets" prior to his criminal trial: "Where pretrial custody is required of one accused of crime, the state has available to it procedures for requiring

bail or otherwise restraining conduct which would render unnecessary immediate resort to the machinery of probation revocation in those instances where the accused happens to be a probationer." (*Id.* at p. 896.) On this basis, and because subjecting a defendant to successive probation revocation and criminal proceedings endangers his privilege against self-incrimination (*ibid.*), we adopted two courses of action in *Coleman*: (1) we implemented a conditional exclusionary rule to discourage the state from scheduling revocation hearings in advance of trial out of the "illegitimate desire" to gain an unfair advantage at trial, and (2) we advised trial courts that the "most desirable method of handling the problems of concurrent criminal and probation revocation proceedings may well be for revocation proceedings not even to be initiated until after disposition of the related criminal proceedings." (*Ibid.*)

Given that the *Coleman* court felt compelled to encourage the People to pursue criminal conviction *before* holding a revocation hearing, it obviously doubted the prophylactic effect of the exclusionary rule it introduced. In fact, while the majority conclude that the *Coleman* exclusionary rule "guarantees the probationer the ability to present a full case at the [revocation] hearing without running the risk of prejudicing his defense at a subsequent trial" (maj. opn., *ante*, at p. 351), there can be no explanation why we *continue* to urge trial courts to hold criminal trials before the revocation hearing (see *People* v. *Belleci* (1979) 24 Cal.3d 879, 888, fn. 7 [157 Cal.Rptr. 503, 598 P.2d 473]; *People* v. *Jasper* (1983) 33 Cal.3d 931, 935 [191 Cal.Rptr. 648, 663 P.2d 206]) except that we cannot ignore the basic unfairness of a contrary practice. Because there are other methods for placing a probationer in pretrial custody, and, thus, probation revocation before trial is unnecessary for the protection of society, I conclude there is little or no justification for allowing the People to continue to hold revocation hearings based on criminal offenses before related criminal trials at the risk of the due process rights of criminal defendants.

In *Coleman*, *supra*, 13 Cal.3d 867, however, rather than requiring that trial courts hold revocation hearings after related criminal trials, we left it to their discretion. Not surprisingly, as noted in *People* v. *Sharp* (1976) 58 Cal.App.3d 126, 129 [129 Cal.Rptr. 476], "This statement is of little, if any, consequence, since the court declined to fashion a judicial rule requiring that revocation be postponed until after trial."[3] Thus in part, I dissent for this reason: so long as our admonition in *Coleman* is often repeated but rarely obeyed, our decisions should be guided by the concern we expressed in *Coleman* for the due process rights of criminal defendants.

---

[3] Indeed, the majority fail to examine whether in the present case the trial court even exercised its discretion in this regard, much less exercised it properly.

Finally, it cannot be denied that the People control the sequence of proceedings. They alone determine what appears to be in the best interest of society and public safety. They should be bound by the procedural choice they make.

Rather than suggesting we exercise our supervisory powers to hold that revocation proceedings *must* be held after trial, however, a suggestion this court has repeatedly declined to accept (see *People* v. *Jasper, supra*, 33 Cal.3d 931, 935; *People* v. *Weaver* (1985) 39 Cal.3d 654, 659 [217 Cal.Rptr. 245, 703 P.2d 1139]), I would simply hold that if the People seek to revoke probation on an allegation of a subsequent crime before bringing a probationer to trial on that crime they will be bound by the decision reached by the revocation hearing judge.

At a very minimum, this court should not reach out to deny proper application of collateral estoppel, as the majority do, when precedent, policy, and equity all dictate otherwise. For this reason, I would affirm the order of the Court of Appeal.

**BROUSSARD, J.**—I dissent. Our decision in *People* v. *Sims* (1982) 32 Cal.3d 468 [186 Cal.Rptr. 77, 651 P.2d 321] compels a conclusion contrary to that reached by the majority. When a trial court conducting a probation revocation hearing specifically finds that the prosecutor has failed to prove that the probationer has committed a new offense, that finding should collaterally estop a subsequent criminal prosecution for the same offense. We should affirm the decision of the Court of Appeal directing the superior court to dismiss the indecent exposure charge on collateral estoppel grounds.

## I.

*People* v. *Sims, supra,* enumerated the three essential elements of the doctrine of collateral estoppel:[1] (1) the party against whom collateral estoppel is asserted was a party in the prior proceeding; (2) the issue decided at the previous proceeding is identical to that which is sought to be relitigated; and, (3) the previous proceeding resulted in a final judgment on the merits.[2]

---

[1] The majority identifies "several threshold requirements" that must be fulfilled before the doctrine may be applied. Essentially, these are the same as the three-part test formulated in *Sims*. (Maj. opn., *ante,* p. 341; cf. *People* v. *Sims, supra,* 32 Cal.3d at p. 484.)

[2] The majority attempts to distinguish *Sims* as confined to the particular and special circumstances presented by the "unique statutory scheme" for resolution of welfare fraud cases. (Maj. opn., *ante,* p. 345.) But nowhere in *Sims* did we expressly or impliedly limit its holding

(*Sims, supra,* at p. 484; see also *Teitelbaum Furs, Inc.* v. *Dominion Ins. Co., Ltd.* (1962) 58 Cal.2d 601, 604 [25 Cal.Rptr. 559, 375 P.2d 439]; *Lockwood* v. *Superior Court* (1984) 160 Cal.App.3d 667, 671 [206 Cal.Rptr. 785].) Implicitly rejecting the reasoning of earlier decisions (e.g., *Chamblin* v. *Superior Court* (1982) 130 Cal.App.3d 115 [181 Cal.Rptr. 636]; *People* v. *Demery* (1980) 104 Cal.App.3d 548 [163 Cal.Rptr. 814]), we concluded that the district attorney in *Sims* was collaterally estopped from relitigating the issue of defendant's alleged welfare fraud in a criminal prosecution when the Department of Social Services, after holding a hearing on that same issue, had exonerated the defendant. (*Sims, supra,* at p. 489.)[3]

The requirements for application of collateral estoppel have also been met in this case. First, the parties in the revocation hearing were the same as they would be in the criminal trial. Second, whether petitioner violated section 314 was "properly raised" and was "submitted for determination" at the revocation hearing. The court's express finding that the People failed to prove a violation of probation based on the alleged offense leaves no doubt that this issue was actually litigated and "determined," and that the determination was "based on a failure of proof." The question of fact that the state now seeks to prove has already been resolved adversely to it. Indeed, the major difference between the two proceedings in this case is the standard of proof applicable at the revocation hearing and criminal trial,

to that context. Though the *Sims* opinion logically discusses the statutory scheme relevant to the case (32 Cal.3d at p. 489 ["In addition to the public policy considerations discussed above, the uniqueness of the statutory scheme governing prosecutions for AFDC fraud . . . [makes] application of collateral estoppel particularly appropriate in this case."]), we did not limit our opinion in *Sims* to cases falling within the purview of that legislation.

[3] We have also found that the adjudication of an issue in a criminal proceeding may collaterally estop the state from pursuing a second criminal proceeding based on the same controversy. In *People* v. *Taylor* (1974) 12 Cal.3d 686 [117 Cal.Rptr. 70, 527 P.2d 622], defendant was the getaway driver in a liquor store robbery committed by Smith and Daniels. In the course of the robbery, the store proprietor shot and killed Smith. (*Id.* at pp. 689-690.) The prosecution of Daniels for Smith's murder resulted in an acquittal. In a later prosecution, however, defendant was convicted of the homicide of his coconspirator. We reversed the conviction, finding that collateral estoppel precluded the state from prosecuting defendant. (*Id.* at p. 691.) We explained that to convict defendant of the homicide, the state had to prove that at least one of defendant's coconspirators acted with the requisite malice aforethought during the robbery and shooting. The jury at Daniels's trial, however, had found that neither of the coconspirators harbored the requisite malice during the incident. Applying the doctrine of collateral estoppel, we held that this judgment was conclusive and could not be relitigated by the state at defendant's trial. (*Id.* at pp. 691-692.)

The majority asserts that while failure to apply collateral estoppel in *Taylor* would have resulted in a fundamentally unfair and logically inconsistent result, no fundamental unfairness would result from a jury verdict contrary to a revocation decision. The majority, however, fails to address specifically this potential for unfairness but rather concludes only with an unsupported assertion that the differences between revocation hearings and criminal trials outweigh "whatever adverse effect inconsistent factual determinations would have on the integrity of the judicial system." (Maj. opn., *ante,* p. 350.)

but it was the *lower* standard of proof[4] the state failed to meet in the revocation hearing. Having failed to meet that burden, the state is now seeking to relitigate the same issue of fact under a more difficult burden of proof.[5]

Third, the probation revocation proceeding resulted in a final judgment on the merits. The court originally placed petitioner on probation only after suspending imposition of sentence. When it later revoked that original grant of probation, the court reinstated petitioner to probation upon different conditions. This order could have been appealed by either party—by petitioner (Pen. Code, § 1466, subd. (b)(1) & (2); *People* v. *Woods* (1978) 84 Cal.App.3d 149, 154 [148 Cal.Rptr. 312]) or by the state (Pen. Code, § 1466, subd. (a)(6); see *People* v. *Warner* (1978) 20 Cal.3d 678, 682, fn. 1 [143 Cal.Rptr. 885, 574 P.2d 1237]). There is nothing in the record to indicate that either party appealed. Thus, the revocation order being final, petitioner has met the third requirement for collateral estoppel. (See *People* v. *Sims, supra,* 32 Cal.3d at p. 486; cf. *In re Crow* (1971) 4 Cal.3d 613, 621-622 [94 Cal.Rptr. 254, 483 P.2d 1206] [state bound by final judgment granting relief in habeas corpus from which no appeal was taken].)

## II.

The majority maintains that the policies and purposes underlying probation revocation hearings and formal trials are so different that the application of the collateral estoppel doctrine would permit the revocation hearing to displace the intended fact-finding function of the trial. (Maj. opn., *ante,* p. 346, citing *State* v. *Dupard* (1980) 93 Wn.2d 268 [609 P.2d 961]; *People* v. *Fagan* (1984) 104 A.D.2d 252 [483 N.Y.S.2d 489], affd. (1985) 66 N.Y.2d 815 [498 N.Y.S.2d 335, 489 N.E.2d 222]; *United States* v. *Miller* (6th Cir. 1986) 797 F.2d 336; see also *Chamblin* v. *Municipal Court, supra,* 130 Cal.App.3d at pp. 120-121.) In *Sims,* however, comparable differences were found to have no effect on the applicability of collateral estoppel. It did not matter, for example, that the state chose not to make the full evidentiary

---

[4] The question of whether the burden of proof in probation revocation hearings is "preponderance of the evidence" or "clear and convincing evidence" is presently pending before this court in *People* v. *Rodriguez* (Cal.App.), but in either case the governing standard requires less than proof "beyond a reasonable doubt." (See *People* v. *Coleman* (1975) 13 Cal.3d 867 [120 Cal.Rptr. 384, 533 P.2d 1024]; *In re Coughlin* (1976) 16 Cal.3d 52 [127 Cal.Rptr. 337, 545 P.2d 249].)

[5] As to the identical-issue requirement, the majority implies that petitioner may not have satisfied the requirement when it notes "that the two proceedings threaten petitioner with fundamentally different sanctions." The majority concedes that "As a technical matter, . . . this fact is not dispositive." Indeed, this fact is not even relevant because the identical-issue requirement addresses whether the same factual allegations are at stake in the two proceedings, not whether the ultimate sanctions are the same. (See *Zaragosa* v. *Craven* (1949) 33 Cal.2d 315, 321 [202 P.2d 73, 6 A.L.R.2d 461].)

presentation necessary to demonstrate guilt beyond a reasonable doubt at trial. (See *People* v. *Sims, supra,* 32 Cal.3d at p. 481; *Teitelbaum Furs, Inc.* v. *Dominion Ins. Co., Ltd., supra,* 58 Cal.2d 601, 607.) Similarly, the state had an opportunity to present its evidence. The state participated fully and the fact that it may have failed to produce all of its evidence is irrelevant. What is significant here is that the state made the decision to proceed with the revocation hearing before the trial, electing to present its case with the advantage of a lesser burden of proof. Having exercised its discretion in this manner, the state cannot now avoid the result of the revocation hearing simply because it chose not to present all of the evidence at the proceeding it instituted.

Nor is the difference in the formality with which the rules of evidence are applied at the hearing dispositive. In *People* v. *Sims, supra,* the administrative hearing—like the revocation hearing here—was not conducted according to the judicial rules of evidence. (See 32 Cal.3d at pp. 480-481.) It did not matter that the state's interest in a jury trial was impaired. (See *id.* at pp. 483-484, fn. 13.) Nor was the difference between the two proceedings determinative on the question of whether to apply collateral estoppel: "The decision exonerating respondent of fraud may be given collateral estoppel effect. This is true even where, as in this case, the successive proceedings involved are different in nature and the proceeding to be estopped is a criminal prosecution." (*Id.,* at p. 482.) For purposes of collateral estoppel, we viewed the function of the administrative hearing as "virtually identical to that of the criminal trial." (*Id.* at p. 483, fn. 13.) The majority presents no logical basis why the same conclusion should not extend to the revocation hearing and trial in the present situation.

Indeed, this case is a stronger case than was *Sims* for application of the doctrine of collateral estoppel. In *Sims* the question was whether collateral estoppel could be applied to administrative decisions made by an administrative agency " '[w]hen an administrative agency is *acting in a judicial capacity* . . . .' " (*People* v. *Sims, supra,* quoting *United States* v. *Utah Construction Co.* (1966) 384 U.S. 394 [16 L.Ed.2d 642, 86 S.Ct. 1545].) In the present case, no such question arises. Here we are dealing with the collateral estoppel effect of a *judicial decision.* It is the judicial decision of a duly appointed judge. Although the majority suggests that the doctrine of collateral estoppel does not apply because a probation revocation hearing is neither a criminal action nor a trial and is completely unrelated to a determination of guilt or innocence, such suggestion is misguided. A probation revocation hearing, at which the court determines that defendant did not commit the charged probation violation, is obviously directed at determining the guilt or innocence as to the same charged conduct. Although the revocation hearing is a "proceeding," not a "trial," the distinction is

irrelevant to the question before us. The doctrine of collateral estoppel depends on what issues are adjudicated, not the nature of the proceeding. (See *People* v. *Sims, supra,* 32 Cal.3d at pp. 484-486; see also *People* v. *Taylor, supra,* 12 Cal.3d at p. 691.)

The majority argues that because the court in a revocation proceeding need only be satisfied that the purposes of probation were not being served, it is not necessary for the court to decide whether the defendant committed a crime. Thus, the issue which the state seeks to litigate at trial, has not necessarily been litigated in the probation revocation hearing. But this argument is misleading. When the state seeks to revoke a defendant's probation because he committed a new criminal act, the judge will almost always have to decide as a question of fact whether the defendant committed that act. The role of the court in resolving such a contested issue of fact is identical to that of the jury at trial. When the judge actually makes an express factual finding after litigation of the issue, this is no different than a factual decision in any other context and collateral estoppel bars relitigation despite the different purposes and procedures at trial and at the hearing. (*Ex Parte Tarver* (Tex.Crim.App. 1986) 725 S.W.2d 195, 198; see also *State* v. *Bradley* (1981) 51 Ore.App. 569 [626 P.2d 403].)

The majority would not be forced to distort the law of collateral estoppel if prosecutors would simply elect to proceed to trial first, allowing the probation revocation hearing to follow. We have repeatedly urged this approach. (See *People* v. *Jasper* (1983) 33 Cal.3d 931, 935 [191 Cal.Rptr. 648, 663 P.2d 206]; *People* v. *Belleci* (1979) 24 Cal.3d 879, 888, fn. 7 [157 Cal.Rptr. 503, 598 P.2d 473]; *People* v. *Coleman, supra,* 13 Cal.3d 867, 896; cf. *People* v. *Weaver* (1985) 39 Cal.3d 654, 659 [217 Cal.Rptr. 245, 703 P.2d 1139].) An initial trial would not preclude a subsequent revocation hearing even if the trial resulted in defendant's acquittal. (See *In re Coughlin, supra,* 16 Cal.3d 52, 57-59.)[6] Any of the adverse policy consequences that the majority asserts might result from application of collateral estoppel in this case should not bar such application where the state exercises its discretion to bring those consequences upon itself.

---

[6]The majority attempts to deal with this question in a footnote (maj. opn., *ante,* p. 348, fn. 10), recognizing that "the People could avoid being collaterally estopped" from prosecuting "either by prosecuting first (and seeking revocation afterward) or by declining to seek revocation based on offenses for which they wish to prosecute" but concluding that there is no inherent unfairness in allowing the People to seek revocation first, and then exercise their discretion in deciding whether to prosecute. The unfairness arises, however, when the prosecution elects to proceed with the revocation hearing first, but then is relieved of the ordinary operation of the collateral estoppel doctrine.

## III.

The majority is of course correct that the collateral estoppel doctrine itself recognizes that collateral estoppel should not be applied if its application would contravene important public policies. In my view the relevant policy considerations favor petitioner's position.

First, judicial economy is promoted by minimizing repetitive litigation. (*People* v. *Sims, supra,* 32 Cal.3d at p. 488; *People* v. *Taylor, supra,* 12 Cal.3d at p. 695.) Precluding the district attorney from relitigating would not only conserve the court's time but would protect petitioner from being harassed by repeated litigation. (*People* v. *Sims, supra,* at p. 489.) The prosecution had an adequate opportunity at a fair hearing to prove its charge. It failed to do so. To subject petitioner to a second proceeding in which he must defend himself against the very same charges of misconduct is unduly burdensome and seemingly unjust.[7]

Another policy concern is "the possibility of inconsistent judgments which may undermine the integrity of the judicial system." (*People* v. *Sims, supra,* 32 Cal.3d at p. 488.) Whatever the burden of proof necessary to revoke a grant of probation (see fn. 4, *ante*), it is less stringent than the beyond-a-reasonable-doubt standard required for conviction. (See *In re Coughlin, supra,* 16 Cal.3d at p. 56.) The revocation hearing is the sole method provided by the Legislature for retracting improvident grants of probation. (See Pen. Code, § 1203.02.) Just as with the administrative "fair

---

[7]The constitutional prohibition against double jeopardy underscores this protection against repetitive prosecution to criminal defendants. (*Harris* v. *Washington* (1971) 404 U.S. 55 [30 L.Ed.2d 212, 92 S.Ct. 183].) Indeed, the United State Supreme Court in *Grady* v. *Corbin* (1990) 495 U.S. __ [109 L.Ed.2d 548, 110 S.Ct. 2084] recently reinforced and expanded the traditional protections of the double jeopardy clause. "[T]he Double Jeopardy Clause bars any subsequent prosecution if, to establish an essential element of an offense charged in that prosecution, the government will prove conduct that constitutes an offense for which the defendant has already been prosecuted." (*Id.* at p. __ [109 L.Ed.2d at p. 564], citations omitted.) To hold otherwise, the court reasoned, would "give the State an opportunity to rehearse its presentation of proof, thus increasing the risk of an erroneous conviction for one or more of the offenses charged." (*Id.* at p. __ [109 L.Ed.2d at p. 562].) Under *Grady,* a trial court asked to rule on the applicability of double jeopardy in a given case must ask itself whether a second prosecution will give the state, in light of its resources and power, an unfair advantage. It must also question whether multiple prosecutions will cause the defendant to suffer undue expense, embarrassment, or psychological insecurity.

In the present matter the majority insists that its analysis is unaffected by *Grady* because "probation revocation hearings are not criminal prosecutions and accordingly should not be given the effect thereof." (Maj. opn., *ante,* p. 343, fn. 5.) I disagree. The policy considerations expressed by the court in *Grady* —the advantage given to the state when it repeatedly prosecutes a defendant for the same conduct and the burden of multiple prosecutions suffered by the accused—are the very concerns we must have here. *Grady* supports the conclusion that the state should not be allowed to relitigate the indecent exposure charge.

hearing" in *Sims*, and the juvenile dependency proceeding in *Lockwood* v. *Superior Court, supra*, 160 Cal.App.3d 667, public confidence in the legislative remedy administered by the courts will not be promoted by allowing the prosecution to treat the revocation hearing as a "Heads I win, tails I flip again" proposition. Under the majority view, the probationer must still face trial on the identical issue, whether the prosecution wins or loses at the revocation hearing. In the event the prosecution fails to satisfy the lesser evidentiary standard, it then has an opportunity to refine its case for trial. (Cf. *People* v. *Sims, supra*, at p. 485.) Indeed, if the criminal prosecution is allowed to proceed, and ultimately results in the probationer's conviction, not only the integrity of the judicial system but also the integrity of the probation revocation process will be called into question. (See *id*. at p. 488.)

## IV.

In sum, I submit that the collateral estoppel doctrine is applicable: the requirements for application of the doctrine have been met and the policies and purposes underlying the doctrine support its application here.

I would affirm the judgment.

Petitioner's application for a rehearing was denied October 25, 1990. Mosk, J., and Broussard, J., were of the opinion that the application should be granted.