Filed 3/13/25  P. v. Lucero CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B334966 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. KA056248) |
| v. | |
| JUAN LUCERO, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, David C. Brougham, Judge.  Affirmed.

Robert E. Myers for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Steven D. Matthews and Analee J. Brodie, Deputy Attorneys General, for Plaintiff and Respondent.

_____

# INTRODUCTION

Juan Lucero appeals from the denial of his second motion to vacate his conviction under Penal Code section 1473.7 on the ground he did not meaningfully understand the immigration consequences of his plea.[1]  The superior court denied his first section 1473.7 motion in 2021, and this court affirmed in 2023 in an unpublished opinion, *People v. Lucero* (Mar. 13, 2023, B317506) (nonpub. opn.) (*Lucero I*).[2]  After our decision, Lucero filed the motion that is the subject of this appeal, which the superior court denied.  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2003, Lucero pleaded no contest to possessing a controlled substance for sale in violation of Health and Safety Code section 11351.  At the time of his plea, Lucero acknowledged in a written plea document that he faced a maximum total sentence of four years in state prison.  Pursuant to the plea agreement, the trial court imposed three years of formal probation with conditions of probation to include serving 90 days

---

[1]     All further references are to the Penal Code unless otherwise specified.

[2]     The People's request to take judicial notice of our previous unpublished opinion in *Lucero I, supra*, B317506 is denied as unnecessary.  (See Cal. Rules of Court, rule 8.1115(b) ["An unpublished opinion may be cited or relied on:  [¶] . . . [¶] (2) When the opinion is relevant to a criminal or disciplinary action because it states reasons for a decision affecting the same defendant or respondent in another such action"].)

2

in county jail (with credit for 33 days served) and contributing 90 days of community labor.

In 2021, Lucero filed a motion under section 1473.7 to vacate his conviction, asserting he did not meaningfully understand the adverse immigration consequences of his plea. That motion was denied after an evidentiary hearing, at which Lucero testified. Lucero appealed.

On March 13, 2023, this court affirmed the denial of Lucero's motion. (*Lucero I, supra,* B317506, at *6.) We held Lucero failed to establish a reasonable probability he would not have entered the plea had he meaningfully understood its adverse immigration consequences. Specifically, we noted Lucero did not testify that he would have chosen to face a possible four-year maximum state prison sentence rather than accept a sentence of three years' formal probation with 90 days in county jail. We further noted Lucero presented no testimony or evidence that immigration consequences were a significant concern for him at the time of his plea. Although he set out in his declaration that he had a wife and four children, he identified no family or friends living in the United States in 2003. Nor did he describe his family situation in, or relationship to, his country of origin. In short, he did not argue he would be "an uncomfortable stranger in an unfamiliar country if he had to leave the United States." (*Ibid.*) Lastly, Lucero presented no evidence that he would have been able to plead to a separate crime that had immigration-neutral consequences. (*Ibid.*)

On June 14, 2023, Lucero filed a second motion under section 1473.7. His counsel, who represented Lucero in his prior appeal but not in the first motion, argued Lucero received ineffective assistance of counsel in connection with the previous

3

motion.  Counsel stated in a declaration that "the evidence at the trial court level was lacking which the appellate court indicated during oral arguments."  Counsel further stated that the California Supreme Court issued *People v. Espinoza* (2023) 14 Cal.5th 311 (*Espinoza*), after Lucero's original petition was filed, which clarified what a court may consider to determine a case under section 1473.7.  In support of Lucero's second motion, counsel stated he attached Lucero's daughter's birth certificate, stated Lucero would testify he would not have pleaded no contest had he known the serious immigration consequences of such a plea, and asserted Lucero could have negotiated a plea to simple possession or could have pleaded to "other sections of the law" that would not have had the same "dire" immigration consequences.[3]  Lucero did not submit his own declaration in support of his second motion.

The People did not file a response to Lucero's second petition or raise any argument at the hearing.

At the hearing, Lucero's counsel on the first section 1473.7 motion was present and ready to testify pursuant to a subpoena, but the court denied Lucero's request to have counsel testify.  After hearing further argument, the superior court denied the motion without an evidentiary hearing.

Lucero timely appealed.

---

[3]     Contrary to counsel's assertion in his declaration, a copy of Lucero's daughter's birth certificate does not appear to be attached and does not appear in the record before us.

DISCUSSION

A.     *Governing Law and Standard of Review*

"Section 1473.7 permits noncitizens to vacate convictions after they are no longer in criminal custody based on a failure to understand adverse immigration consequences of their convictions." (*People v. Singh* (2022) 81 Cal.App.5th 147, 151-152; accord, *People v. Vivar* (2021) 11 Cal.5th 510, 517 (*Vivar*); § 1473.7, subd. (a).)  The defendant must show by a preponderance of the evidence "that he did not meaningfully understand the immigration consequences of his plea.  Next, the defendant must show that his misunderstanding constituted prejudicial error." (*Espinoza, supra,* 14 Cal.5th at p. 319; *Vivar,* at p. 523; § 1473.7, subds. (e)(1), (a)(1).)  "[S]howing prejudicial error under section 1473.7, subdivision (a)(1) means demonstrating a reasonable probability that the defendant would have rejected the plea if the defendant had correctly understood its actual or potential immigration consequences." (*Vivar*, at p. 529.)

Courts must "consider the totality of the circumstances" to determine whether a defendant has shown by "objective evidence" that he would have rejected the plea.  (*Vivar, supra*, 11 Cal.5th at pp. 529-530.)  "Factors particularly relevant to this inquiry include the defendant's ties to the United States, the importance the defendant placed on avoiding deportation, the defendant's priorities in seeking a plea bargain, and whether the defendant had reason to believe an immigration-neutral negotiated disposition was possible." (*Ibid*.)  Additional factors include the "probability of obtaining a more favorable outcome if he had rejected the plea, as well as the difference between the

bargained-for term and the likely term if he were convicted at trial." (*Espinoza, supra,* 14 Cal.5th at p. 320.)

Objective evidence to corroborate the defendant's assertion of prejudice may include declarations from family members, friends, colleagues, community members, or other acquaintances that demonstrate a defendant's community ties to the United States, such as the length of residence, immigration status, lack of connection to the country of origin, connections to family, friends, or the community, work history or financial ties, or other forms of attachment. (See *Espinoza, supra,* 14 Cal.5th at pp. 323-325.)

If the motion is meritorious, "the court shall allow the moving party to withdraw the plea." (§ 1473.7, subd. (e)(3).) We apply independent review to rulings under section 1473.7. (See *Espinoza, supra,* 14 Cal.5th at p. 319; *Vivar, supra*, 11 Cal.5th at p. 524.)

B.    *Lucero Has Not Demonstrated He Meets the Standard of Proof Under Section 1473.7*

As a threshold matter, the People argue issue preclusion bars Lucero's section 1473.7 motion, but they forfeited this argument by failing to raise it in the superior court. (See *People v. Harden* (2022) 81 Cal.App.5th 45, 52 ["'collateral estoppel is [forfeited] if not raised in the trial court'"]; *People v. Morales* (2003) 112 Cal.App.4th 1176, 1185 [same].) "The party asserting collateral estoppel bears the burden of establishing [the doctrine's] requirements." (*Lucido v. Superior Court* (1990) 51 Cal.3d 335, 341.) The People do not argue that any exception to forfeiture applies, and we decline to exercise our discretion to reach the argument.

6

In any event, Lucero argues the superior court rejected his motion on the merits, and this is confirmed by our review of the reporter's transcript. Although at one point the court stated, "I believe issues were litigated" and referred to the denial of the previous motion and this court's affirmance, it made no mention of issue preclusion (or collateral estoppel) let alone made any findings that Lucero's motion was procedurally barred. Rather, the court denied the motion on the merits, and it examined not only the second motion, but the evidence in the first motion to conclude Lucero's showing was deficient. Specifically, the superior court concluded Lucero failed to meet his burden to show prejudice as required by *Espinoza* and *Vivar,* despite a lengthy discussion of the showing necessary in *Lucero I.*

Our prior opinion concluded Lucero failed to present any objective evidence to corroborate his claim that he would not have pleaded no contest if he had understood the immigration consequences of his plea. We observed: "In his declaration Lucero explained he emigrated from Mexico in 1994 when he was 17 years old and stated, since that time, he had always considered this country his home. However, he provided no information about any ties to the United States other than physical presence between 1994 and 2003 when he entered his guilty plea and his work in this country as a handyman and in construction. In particular, although Lucero declared he married in 2013 and now has four children with his wife, he identified no relatives or extended family members (or even close friends) living in the United States in 2003." (*Lucero I, supra,* B317506, *6.) "Nor did Lucero describe his family situation in, or relationship to, Mexico, eschewing any suggestion he would be an

7

uncomfortable stranger in an unfamiliar country if he had to leave the United States." (*Ibid*.)

We contrasted Lucero's evidence with that in *Vivar* and *Espinoza*. (See *Lucero I, supra,* B317506, \*6.) Vivar presented evidence he came to the United States when he was six years old and, at the time of his offense, had lived here for 40 years and had a wife, two children (one then serving in the United States Air Force) and two grandchildren, all of whom were citizens. Additionally, "Vivar had virtually no ties to Mexico, spoke Spanish 'like an American,' and found it 'difficult to function in Mexican society because people treat [him] like an outsider.'" (*Vivar, supra*, 11 Cal.5th at p. 530.) Espinoza presented evidence he had lived in California for 23 years (he came to this country when he was 13 years old); he was a lawful permanent resident; his wife and five children were United States citizens; and his parents and siblings lived in the United States. (See *Espinoza, supra,* 14 Cal.5th at p. 321.)

We are aware the California Supreme Court made clear that: "*Vivar* did not suggest that the circumstances of that case constitute minimum requirements for establishing prejudicial error . . . . Rather, the inquiry under section 1473.7 requires consideration of the 'totality of the circumstances,' which necessarily involves case-by-case examination of the record [citation], and no specific kind of evidence is a prerequisite to relief." (*Espinoza, supra*, 14 Cal.5th at p. 325.) But as explained below, we conclude Lucero's showing was insufficient on the record before us.

To the extent Lucero intended the second motion as a supplement to his first motion, Lucero did not request judicial notice of his first motion or the supporting evidence in this court.

8

"[W]e cannot consider on appeal evidence that is not in the record." (*People v. Fairbank* (1997) 16 Cal.4th 1223, 1249.) Even if we considered our prior opinion in *Lucero I*, the statements therein do not constitute evidence. "'We may take judicial notice of the existence of judicial opinions and court documents, along with the truth of the results reached—in documents such as orders, statements of decision, and judgments—but cannot take judicial notice of the truth of hearsay statements in decisions or court files, including pleadings, affidavits, testimony, or statements of fact.'" (*Aixtron, Inc. v. Veeco Instruments Inc.* (2020) 52 Cal.App.5th 360, 382; accord, *People v. Harbolt* (1997) 61 Cal.App.4th 123, 126.) Additionally, our review of Lucero's moving papers for the second motion and the reporter's transcript from the hearing suggests that Lucero sought to introduce his daughter's birth certificate. But this document was not actually attached to any declaration and is not in the appellate record.

To the extent Lucero intended the second motion as a freestanding motion, it was insufficient to carry his burden of providing "objective evidence" of his community ties to the United States as described in *Espinoza, supra,* 14 Cal.5th at pages 323 to 325. At a minimum, it would have been helpful for Lucero to submit a declaration of his own or perhaps provide some explanation why it was not submitted, either in the moving papers or in an attorney declaration. Instead, his counsel attested that "Lucero would not have pled no contest had he known the serious immigration consequences of pleading no contest." Even if we were to deem Lucero's current counsel to have personal knowledge of Lucero's state of mind in 2003, his counsel's assertions are insufficient under *Espinoza* and *Vivar* to demonstrate Lucero's ties to the United States.

9

We need not address Lucero's argument that it was error not to allow prior counsel to testify at the hearing to explain the deficiencies in Lucero's first motion. Whatever counsel might have testified to regarding the deficiencies of the first motion, Lucero does not explain why he could not have presented that evidence with his second motion.

## DISPOSITION

The order dated November 3, 2023, denying Lucero's second motion to vacate his conviction is affirmed.

                                        MARTINEZ, P. J.

We concur:


        SEGAL, J.


        PULOS, J. *

---

*       Judge of the San Diego County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.