Filed 12/3/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| LANDIS' LABYRINTH, INC., | B339581 |
| Plaintiff and Appellant, | Los Angeles County |
| | Super. Ct. No. |
| v. | 23STCV00964 |
| BRIAN WHITAKER et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Timothy Patrick Dillon and Rolf M. Treau, Judges. Reversed in part, affirmed in part.

Samuel T. Rees for Plaintiff and Appellant.

Hannah Law, Jeffrey Hannah and Russell Handy for Defendants and Respondents.

Landis' Labyrinth, Inc. (Landis) appeals a judgment in a malicious prosecution action. In the underlying case, Brian Whitaker sued Landis for violating the Americans with Disabilities Act of 1990 (42 U.S.C. § 12101 et seq., the ADA) and the Unruh Civil Rights Act (Civ. Code, § 51 et seq., the Unruh Act).[1] Russell Handy and his firm, Potter Handy, LLP, represented Whitaker in the action. Whitaker alleged he visited Landis's toy store but was dissuaded from making a purchase because the sales counter was too high for him to use comfortably. A federal court dismissed the ADA claim as moot, and the parties tried the Unruh Act claim in the superior court before the Honorable Frederick C. Shaller. Judge Shaller ruled in favor of Landis, concluding Whitaker fabricated a story about shopping at the store and being deterred by the height of the sales counter. Judge Shaller found Whitaker instead visited the store solely to look for ADA violations so he could file a lawsuit.

After its success on the Unruh Act claim, Landis filed this malicious prosecution action against Whitaker, Handy, and Potter Handy, LLP (Defendants). Defendants moved for summary judgment on the grounds that Landis could not prove they lacked probable cause or acted with malice. The trial court agreed and entered judgment for Defendants.

On appeal, Landis argues the trial court erred in granting Defendants' motion for summary judgment. Landis contends the trial court should have given preclusive effect to Judge Shaller's findings in the underlying action, which alone are sufficient to establish a lack of probable cause and malice. We agree with

---

[1]     Undesignated statutory references are to the Civil Code.

2

Landis in part. Judge Shaller's findings are entitled to preclusive effect and support a conclusion that Whitaker brought the action against Landis despite knowing facts refuting an essential element of the Unruh Act claim. Therefore, the findings are sufficient to show Whitaker lacked probable cause and acted with malice. However, Judge Shaller's findings do not support the same conclusions as to Handy and Potter Handy, LLP. Accordingly, we reverse in part and affirm in part.

**FACTUAL AND PROCEDURAL BACKGROUND**

1. ***Whitaker's federal action for violations of the ADA and Unruh Act***

In November 2019, Whitaker filed a complaint in federal court against Landis, asserting causes of action under the ADA and Unruh Act.[2] Handy and Potter Handy, LLP (the Attorneys) represented Whitaker in the lawsuit. At that time, Landis owned and operated a toy store called Landis' Labyrinth Toy Shop (the Store), located on Larchmont Boulevard in the Hancock Park neighborhood of Los Angeles.

Whitaker alleged in the complaint that he is disabled and uses a wheelchair for mobility. Whitaker allegedly went to the Store in October 2019 "with the intention to avail himself of its goods, motivated in part to determine if the defendants comply with the disability access laws." While inside the Store, Whitaker "personally encountered" a sales counter that was too high off the floor, which "created difficulty and discomfort"

---

[2] Whitaker also named as a defendant in the federal action Larchmont Village Plaza, LLC (Larchmont). Larchmont is not a party to this case. Therefore, we do not summarize the facts related to it.

3

for Whitaker and denied him full and equal access to the Store. Whitaker sought damages and an injunction compelling Landis to adjust the sales counter to comply with the law.

Less than a month after Whitaker filed the complaint, Landis remedied the alleged violation by attaching a lowered counter to the existing sales counter. After doing so, Landis moved for summary judgment. The federal court determined Whitaker's ADA claim was moot, and it granted partial summary judgment for Landis. The court declined to exercise supplemental jurisdiction over Whitaker's Unruh Act claim and dismissed it without prejudice.

**2.** ***Whitaker's state action for violation of the Unruh Act***

a. *The complaint*

After the federal court dismissed the case, Whitaker filed a verified complaint in the superior court against Landis, asserting a single cause of action for violation of the Unruh Act. The complaint's factual allegations were essentially the same as those in the federal complaint. Once again, Whitaker alleged he went to the Store on October 12, 2019 "with the intention to avail himself of its goods, motivated in part to determine if defendants comply with the disability access laws."

b. *The trial*

The parties tried the claim before Judge Shaller over the course of two days. Whitaker testified that he went to the Store on October 12, 2019 to purchase a specific board game. Whitaker searched for the game but could not find it. He was the only person in the Store at the time; there were no employees or customers present. At some point, Whitaker noticed the sales counter was very high off the floor. He went over to the counter to check its height and take a picture of it. Whitaker waited

4

at the counter for two to three minutes, and he left when no one came to help him.

Whitaker admitted he visited "a lot" of stores on Larchmont Boulevard on October 12, 2019. He estimated it was "maybe a dozen." Whitaker filed lawsuits against at least four of the stores he visited that day.

In its defense, Landis presented testimony from two of its employees who were working on October 12, 2019. Neither employee saw a person in a wheelchair come into the Store that day. Landis's owner, Devoney Wolfus, testified that employees are trained to greet every customer who enters the Store.

c. *Judge Shaller's statement of decision*

After trial, Judge Shaller issued a statement of decision finding in Landis's favor. Judge Shaller explained that, to prevail on the Unruh Act claim, Whitaker had to prove the height of the sales counter violated the ADA, the violation denied him full and equal access to the Store, he personally encountered the violation, and the violation deterred him from accessing the Store on a particular occasion. Judge Shaller concluded Whitaker failed to prove any of those elements.

Judge Shaller found Whitaker's testimony "not . . . credible." He noted that Whitaker initially "could not describe the interior of the [S]tore . . . or its layout, or anything about the . . . visit." After a break in his testimony, Whitaker used "photographs of the [Store] to create a story of what happened in the [S]tore. [Whitaker] changed or enhanced his initial testimony to indicate that he was going to the [Store] to buy a board game and that he shopped around the [S]tore without finding it before he noticed the height of the sales counter."

Judge Shaller determined Whitaker "did no more than poke his head into the [S]tore to take a photo" of the sales counter, and his sole purposes for entering the Store was to "scop[e] out the [S]tore for ADA violations." Whitaker "never attempted to make a sales transaction or do anything at the [S]tore other than to scope it out for purposes of determining whether he could sue [Landis] for an ADA violation." Whitaker never "shopped" at the Store, never "intended to shop or buy anything at the [S]tore," and did not suffer "any difficulty, discomfort, or embarrassment as [a] result of the height or condition of the sales counter."

Judge Shaller also found Whitaker failed to prove the sales counter violated the ADA. He explained that, although Whitaker presented some evidence showing the counter's height, he did not introduce into evidence the relevant ADA standards or present expert testimony on how those standards apply to the sales counter.

Judge Shaller entered judgment for Landis. Whitaker did not appeal.

**3.**     ***Landis's action for malicious prosecution***

a.     *The complaint*

After Judge Shaller entered judgment in the Unruh Act action, Landis filed a complaint for malicious prosecution against Defendants. The complaint alleged Defendants "embarked on a scheme to extract money from businesses in Southern California by claiming that those businesses" were in violation of the ADA and Unruh Act. As part of that scheme, Whitaker traveled to Larchmont Boulevard on October 12, 2019 looking for businesses to sue. Defendants filed complaints against Landis in which Whitaker falsely alleged he went to the Store to shop and personally encountered barriers that denied him full and equal

6

access to the Store. Landis asserted Defendants filed the complaints to "extract money from Landis to which they were not entitled."

b. *Defendants' motion for summary judgment*

Defendants filed a motion for summary judgment on the grounds that Landis could not establish they lacked probable cause or acted with malice. Defendants asserted the critical issue at trial was Whitaker's intention for visiting the Store. Therefore, Whitaker's testimony as to his own state of mind was sufficient to show probable cause. Defendants also argued Landis could not prove they acted with malice because there is no evidence they pursued the litigation for any reason other than to obtain injunctive relief and recover monetary penalties available under the law.

Defendants submitted a declaration from Whitaker in support of their motion. Whitaker referred to himself as an "ADA tester" who "investigate[s] stores with the full intention of hauling them into court to pay penalties and be forced to comply with the law if they are violating the ADA or Unruh Act." Whitaker stated he visits "stores with the intention of making a purchase of some sort or otherwise engaging with the facility as the public would, in order . . . to strengthen [his] standing to seek fixes."

Whitaker asserted he has "consistently reported to [his] attorneys, declared in declarations, and testified at trial" that he went to the Store "to shop and to explore the [S]tore for disability civil rights violations." While inside the Store, he "discovered that the sales counter was way too high" for him to use comfortably, which is a problem he consistently faces. Whitaker insisted his sole motivation for pursuing the litigation was to

seek remedies under the ADA and Unruh Act. He denied having a prior relationship with Landis or its owners, or harboring any ill will towards them.

Defendants also submitted a declaration from Russell Handy. Handy asserted that, during an intake interview, Whitaker said he went to the Store to "shop and to explore the [S]tore for disability civil rights violations." Whitaker said he did not "consummate a transaction because, among other things, the sales counter was inaccessible." Handy sent an investigator to confirm Whitaker's claims and document the violation. The investigator provided Handy a report and photographs showing the counter was 43 inches high. Defendants submitted a declaration from the investigator and the photographs he took of the Store.

Handy asserted he always believed Whitaker's assertion that he went to the Store to shop and investigate possible ADA violations. Handy insisted his sole motivation in litigating the action was to seek remedies available under the ADA and Unruh Act. He denied having any ill will towards Landis or anyone associated with it.

c. *Landis's opposition*

In opposition to the motion for summary judgment, Landis argued Judge Shaller's factual findings are binding under the doctrine of issue preclusion. According to Landis, those findings conclusively establish that Defendants lacked probable cause and acted with malice in bringing the Unruh Act claim. Landis argued Judge Shaller's findings show Defendants knew Whitaker did not enter the Store with the intent to shop, did not encounter a barrier inside the Store, and did not suffer any difficulty, discomfort, or embarrassment. Because those are elements of

8

an Unruh Act claim, Landis asserted, Defendants must have known they did not have a viable claim. Landis argued Judge Shaller's findings also show Defendants' "sole motive" in bringing the Unruh Act claim was to extort money by forcing it to settle a frivolous lawsuit. Landis also argued Defendants improperly continued to pursue the ADA claim in federal court after it became moot.

In support of its opposition, Landis asked the court to take judicial notice of transcripts from the underlying trial, the underlying judgment, and Judge Shaller's statement of decision. Landis also submitted declarations from its owner and CEO, Devoney Wolfus, and her father, Daniel Wolfus. Devoney asserted Landis incurred more than $100,000 in attorneys' fees and costs defending against Whitaker's lawsuits. According to Daniel, the Attorneys offered to settle the case for around $22,000.

d. *The trial court's decision*

The trial court granted Defendants' motion for summary judgment. The court found Defendants met their initial burden by presenting evidence that Whitaker entered the Store to purchase a board game, but the inaccessible sales counter dissuaded him from making a purchase. Defendants also presented evidence showing Whitaker relayed that information to Handy, and Handy's investigator confirmed the sales counter violated the ADA. The court concluded this evidence showed Defendants had probable cause and did not act with malice. Therefore, the court shifted the burden to Landis to raise triable issues of fact.

The court found Landis failed to meet its burden. Citing *Plumley v. Mockett* (2008) 164 Cal.App.4th 1031 (*Plumley*),

9

the court declined to apply the doctrine of issue preclusion to Judge Shaller's factual findings. The court explained that "Judge Shaller's factual findings are not relevant to this court's determination as to whether there was probable cause on this motion. . . . [T]he ultimate issue of whether there was an ADA violation is not germane to this motion. Therefore, Judge Shaller's determination is not dispositive on this motion. Rather, the issue is whether there was probable cause for the existence of an ADA violation and its remediation. Given all the litigation and rulings, there seems little doubt that, at a minimum, there was probable cause supporting the existence of an ADA violation."

The court also found Landis failed to raise triable issues of fact on the malice element. It noted the undisputed evidence shows the parties had no prior dealings, and Defendants were pursuing remedies available under the law.

The court entered judgment for Defendants. Landis timely appealed.

## DISCUSSION

Landis contends the trial court erred in granting Defendants' motion for summary judgment. We separately consider Landis's arguments as they relate to Whitaker and to the Attorneys.

1.     *Standard of review*

Summary judgment is proper if the papers submitted show there is no triable issue as to any material fact and the moving party is entitled to prevail on a cause of action as a matter of law. (Code. Civ. Proc., § 437c, subd. (c); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.) A defendant moving for summary judgment has the initial burden to show the plaintiff

10

cannot establish one or more elements of the challenged cause of action or there is a complete defense to that cause of action. (Code Civ. Proc., § 437c, subd. (p)(2).) If the defendant makes a sufficient showing, the burden then shifts to the plaintiff to demonstrate a triable issue of material fact exists. (*Ibid*.) A triable issue of fact exists if the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion. (*Aguilar,* at p. 850.)

On appeal from a summary judgment, we review the record de novo and independently determine whether triable issues of material fact exist. (*Saelzler v. Advanced Group* 400 (2001) 25 Cal.4th 763, 767; *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334.) We "view the evidence in a light favorable" to the nonmoving party, "resolving any evidentiary doubts or ambiguities" in that party's favor. (*Saelzler*, at p. 768.) We consider all evidence the parties submitted in connection with the motion, except that which the court properly excluded. (*Merrill v. Navegar, Inc*. (2001) 26 Cal.4th 465, 476.)

2. **Relevant law**

a. *Malicious prosecution*

"To prevail on a malicious prosecution claim, the plaintiff must show that the prior action (1) was commenced by or at the direction of the defendant and was pursued to a legal termination favorable to the plaintiff; (2) was brought without probable cause; and (3) was initiated with malice." (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 292 (*Soukup*).)

" 'An action is deemed to have been pursued without probable cause if it was not legally tenable when viewed in an objective manner as of the time the action was initiated or while it was being prosecuted.' [Citation.] The test is whether,

11

on the basis of facts then known, any reasonable attorney would have believed that instituting or maintaining the prior action was tenable." (*Citizens of Humanity, LLC v. Hass* (2020) 46 Cal.App.5th 589, 599 (*Hass*).) "If the plaintiff's knowledge and belief supporting its causes of action are undisputed, probable cause is a legal question for the trial court. If, however, the plaintiff's knowledge and belief are disputed, then the jury must determine the facts before the court can decide the legal question of whether those facts constitute probable cause." (*Videotape Plus, Inc. v. Lyons* (2001) 89 Cal.App.4th 156, 161; see *Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 880–881 (*Sheldon Appel*).)

To establish the malice element of a malicious prosecution claim, a plaintiff must show the defendant initiated the prior action for an improper purpose. (*Hass, supra*, 46 Cal.App.5th at pp. 606–607.) Malice is not limited to actual ill will towards the plaintiff. (*Ibid.*) Instead, malice " 'may range anywhere from open hostility to indifference.' " (*Soukup, supra*, 39 Cal.4th at p. 292.)

b.    *The ADA and Unruh Act*

"The ADA prohibits discrimination on the basis of disability in the enjoyment of public accommodations, including with respect to access. (42 U.S.C. § 12182.) Businesses must ' "remove architectural barriers . . . in existing facilities . . . where such removal is readily achievable." ' [Citation.] Liability does not depend on proof of intentional discrimination, but a private litigant cannot obtain damages for the denial of access, only injunctive relief." (*Jankey v. Lee* (2012) 55 Cal.4th 1038, 1044 (*Jankey*).)

12

The Unruh Act "broadly outlaws arbitrary discrimination in public accommodations and includes disability as one among many prohibited bases." (*Jankey, supra*, 55 Cal.4th at p. 1044, citing § 51, subd. (b).) Violations of the ADA are per se violations of the Unruh Act. (*Jankey*, at p. 1044.) However, the Unruh Act provides remedies beyond those available under the ADA, including actual damages and a minimum statutory award of $4,000 per violation. (*Id.,* citing § 52, subds. (a), (c)(3).)

To recover damages under the Unruh Act for a "construction-related accessibility claim against a place of public accommodation," a plaintiff must show the violation "denied the plaintiff full and equal access to the place of public accommodation on a particular occasion." (§ 55.56, subd. (a); see *Mundy v. Pro-Thro Enterprises* (2011) 192 Cal.App.4th Supp. 1, 5.) "A plaintiff is denied full and equal access only if the plaintiff personally encountered the violation on a particular occasion, or the plaintiff was deterred from accessing a place of public accommodation on a particular occasion." (§ 55.56, subd. (b).) A plaintiff may show a violation denied him full and equal access to a public accommodation if he "experienced difficulty, discomfort, or embarrassment because of the violation." (*Id*., subd. (c).)

### 3. *The trial court erred in granting summary judgment for Whitaker*

The parties do not dispute that Whitaker met his initial burden on summary judgment. Whitaker submitted a declaration stating he went to the Store "with the intention to shop and to examine the [S]tore for compliance with the ADA." While inside the Store, Whitaker "discovered that the sales counter was way too high" for him to use comfortably, which

13

deterred him from making a purchase. Whitaker submitted photographs of the sales counter and a declaration from an investigator who measured its height to be 43 inches. Whitaker also asserted his "sole motivation" for prosecuting the claims against Landis "was to seek the remedies provided for by" the ADA and Unruh Act. This evidence was sufficient to show Whitaker had probable cause to pursue the Unruh Act claim and did so without malice. Accordingly, the burden shifted to Landis to present evidence raising triable issues of fact.

Landis argues it met its burden by submitting Judge Shaller's factual findings in the underlying case. According to Landis, Judge Shaller's findings are entitled to preclusive effect under the doctrine of issue preclusion. Landis contends those findings conclusively establish that Whitaker lacked probable cause and pursued the Unruh Act claim with malice.[3]

Issue preclusion—which has historically been called collateral estoppel—"prohibits the relitigation of issues argued and decided in a previous case, even if the second suit raises different causes of action." (*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 824 (*DKN Holdings*).) It applies "(1) after final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was a party in the first suit or one in privity with that party." (*Id.* at p. 825.) Courts must consider the public policies underlying the doctrine before applying it in a particular case.

---

[3]     In the trial court, Landis also argued Whitaker lacked probable cause to continue to pursue his ADA claim after it became moot. Landis does not meaningfully address that issue on appeal, so we do not consider it.

14

(*Lucido v. Superior Court* (1990) 51 Cal.3d 335, 342–343 (*Lucido*).) Those policies include preservation of the integrity of the judicial system, promotion of judicial economy, and protection of litigants from harassment by vexatious litigation. (*Ibid.*)

Citing *Plumley, supra,* 164 Cal.App.4th 1031, Whitaker contends Landis cannot rely on issue preclusion to show he lacked probable cause. *Plumley* involved a decades-long dispute over a patent for a specific type of grommet. Both Plumley and Mockett claimed to be its original inventor. (*Id.* at pp. 1036–1037.) Mockett filed a complaint in state court alleging Plumley misappropriated his invention. (*Id.* at p. 1037.) Around the same time, Mockett initiated an administrative "interference" action before the Board of Patent Appeals and Interferences (the Board), asserting two theories: derivation and priority of invention. (*Id.* at p. 1039.)

The two forums reached opposite conclusions. The state court ruled for Plumley, finding Mockett had fabricated a story about inventing the grommet. (*Plumley, supra*, 164 Cal.App.4th at pp. 1038, 1043.) The Board, however, found Mockett invented the grommet and Plumley had derived the invention from Mockett's design. (See *id.* at pp. 1041–1042.) The Board declined to give preclusive effect to the state court's findings and rejected Plumley's argument that Mockett had fabricated his story. (See *id.* at pp. 1039, 1056.)

Plumley challenged the Board's decision in a federal district court. (*Plumley, supra*, 164 Cal.App.4th at p. 1043.) Like the Board, the district court declined to give preclusive effect to the state court's findings. (*Ibid.*) Nevertheless, it overturned the Board's decision, concluding there was insufficient evidence

showing Plumley derived the invention from Mockett. (*Id.* at p. 1044.) The district court sent the case back to the Board to decide whether Mockett was entitled to relief on his alternative theory of priority of invention. (*Ibid.*) On remand, the Board noted the district court had not disturbed its findings that Mockett had designed the grommet first. However, the Board ruled in favor of Plumley, concluding Mockett failed to prove all the elements of a priority of invention claim. (*Ibid.*)

After a federal appellate court affirmed the Board's final decision, Plumley brought a malicious prosecution action against Mockett for initiating the interference action before the Board. (*Plumley, supra*, 164 Cal.App.4th at p. 1045.) Mockett filed an anti-SLAPP motion, which the trial court denied. (*Ibid.*)

Mockett appealed, and the Court of Appeal reversed the order denying his anti-SLAPP motion. (*Plumley, supra*, 164 Cal.App.4th at p. 1036.) The court rejected Plumley's argument that the state court's findings in the misappropriation case were entitled to preclusive effect and dispositive of the probable cause issue. (*Id.* at pp. 1048–1050.) The court reasoned, "while Plumley contends that Mockett's claims in the state court action are identical to his claims *in the interference [action]*, he makes absolutely no showing Mockett's state court claims are 'identical' to those to be litigated here. Moreover, they are facially distinguishable: The issue in the state court action was whether Plumley misappropriated Mockett's invention; the issue here is whether Mockett had reasonable cause to believe he did so." (*Id.* at p. 1049.)

The Court of Appeal also explained policy considerations weighed against applying issue preclusion. According to the court, applying issue preclusion "would fundamentally

16

undermine our public policy of permitting parties to pursue nonfrivolous litigation without facing subsequent liability for malicious prosecution. Indeed, if the state court's findings were given [issue preclusive] effect, Plumley effectively would be relieved of his burden to prove that Mockett lacked probable cause, and Mockett would be deprived the opportunity to prove that, in fact, he did have probable cause." (*Plumley, supra*, 164 Cal.App.4th at p. 1050.)

We do not find *Plumley* persuasive. At the outset, it is not clear the *Plumley* court correctly applied the doctrine of issue preclusion. The court stated issue preclusion did not apply because Plumley failed to show Mockett's "state court *claims* are 'identical' to those to be litigated *here*." (*Plumley, supra*, 164 Cal.App.4th at p. 1049, first italics added.) However, issue preclusion does not require identical claims. (See *Vandenberg v. Superior Court* (1999) 21 Cal.4th 815, 828 [issue preclusion may "preclude a party to prior litigation from redisputing issues therein decided against him, even when those issues bear on different claims raised in a later case"].) It is not clear if the *Plumley* court misunderstood this requirement, or if it simply used imprecise language.

The *Plumley* court also seemed to misidentify the relevant issues subject to preclusion. The court noted, the "issue in the state court action was whether Plumley misappropriated Mockett's invention; the issue here is whether Mockett had reasonable cause to believe he did so." (*Plumley, supra*, 164 Cal.App.4th at p. 1049.) This remark suggests the court believed issue preclusion applies only to ultimate issues. However, the "identical issue requirement for issue preclusion addresses whether identical factual allegations are at stake, 'not whether

17

the ultimate issues or dispositions are the same.' " (*Key v. Tyler* (2019) 34 Cal.App.5th 505, 534 (*Key*), quoting *Lucido, supra*, 51 Cal.3d at p. 342.)

Even assuming the *Plumley* court correctly analyzed the issue, it is readily distinguishable. In *Plumley*, the state court and the Board made inconsistent factual findings concerning who invented the grommet, and the Board expressly declined to give preclusive effect to the state court's findings. Applying issue preclusion under those circumstances would have led to bizarre results. As the *Plumley* court observed in a footnote, "a necessary implication of Plumley's [issue preclusion] argument is that once Plumley secured a favorable decision in the state proceeding, there could never have been probable cause to pursue the federal interference action—even if, as the Board and the district court found, the state findings were not preclusive in the federal suit. That cannot be the case." (*Plumley, supra*, 164 Cal.App.4th at p. 1050, fn. 6.)

Those concerns are not present here. This case does not involve contradictory rulings from different judicial bodies. Nor has another judicial body declined to give preclusive effect to Judge Shaller's findings. Therefore, unlike in *Plumley*, applying issue preclusion would not create a conflict with another judicial body's rulings or findings. If anything, it would eliminate the risk of such conflicts.

This case instead more closely resembles *Key, supra*, 34 Cal.App.5th 505, which involved a straightforward application of issue preclusion. *Key* concerned a dispute between two siblings over a 2007 amendment to a family trust. (*Id*. at p. 509.) Key filed a petition alleging her sister—Tyler—used undue influence to effectuate the amendment. (*Ibid*.) Tyler opposed the petition.

18

(*Id*. at p. 513.)  The probate court agreed with Key and issued a 67-page statement of decision granting the petition.  (*Ibid*.)  The probate court found Tyler knew the settlor was vulnerable, controlled communications between the settlor and counsel, actively participated in procuring the 2007 amendment, overcame the settlor's will, and obtained undue benefits under the 2007 amendment.  (See *id*. at pp. 536–537.)

After the Court of Appeal affirmed the order, Key filed a petition to enforce the trust's "no contest" clause, which would have effectively disinherited Tyler.  (*Key, supra*, 34 Cal.App.5th at pp. 509, 523.)  To enforce that clause, Key had to show Tyler lacked probable cause to defend the 2007 amendment.  (*Id*. at pp. 523–524; see Prob. Code, § 21311, subd. (a)(1).)[4]

Tyler responded by filing an anti-SLAPP motion challenging Key's petition.  (*Key, supra*, 34 Cal.App.5th at p. 513.)  The probate court granted the motion, concluding Key did not show a probability of success because she could not establish Tyler lacked probable cause to defend the 2007 amendment.  (*Id*. at pp. 513–514.)  The court noted the judge who decided the invalidity petition had " 'indicated that it was a difficult case to decide, which, itself, gives this court, which did not try the case, some pause as to . . . how much the defense was without probable cause.' "  (*Ibid*.)

---

[4]     For purposes of enforcing a no contest clause, "probable cause exists if . . . the facts known to the contestant would cause a reasonable person to believe that there is a reasonable likelihood that the requested relief will be granted after an opportunity for further investigation or discovery."  (Prob. Code, § 21311, subd. (b).)

19

The Court of Appeal reversed the order denying the anti-SLAPP motion. (*Key, supra*, 34 Cal.App.5th at p. 510.) The court concluded Key showed a probability of prevailing simply by submitting the probate court's 67-page statement of decision. The court held, under the doctrine of issue preclusion, Key could rely on the factual findings in that decision to prove Tyler lacked probable cause to defend the amendment. (See *id.* at pp. 534–539.) The court explained the probate court's findings supported an inference that "Tyler acted *intentionally* in manipulating [the settlor] and in using 'excessive persuasion' on her to obtain terms in the 2007 Amendment that were not the result of [the settlor's] free will." (*Id.* at p. 538.) From this, a court could find Tyler lacked probable cause because "a reasonable person in Tyler's position would not have believed there was a 'reasonable likelihood' that the 2007 Amendment was valid." (*Id.* at p. 539.)

The court clarified that the probate court's factual findings did "not establish the lack of probable cause as a matter of law. Although the factual findings themselves are binding, the probate court in the prior trial was not asked to decide the issue of probable cause and therefore did not draw any inferences specifically related to that issue. However, the established facts are sufficient to establish at least a prima facie case that Tyler lacked probable cause." (*Key, supra*, 34 Cal.App.5th at p. 539, fn. omitted.)

The same is true here. As relevant to this case, Judge Shaller found Whitaker entered the Store with the sole purpose of scoping it out for ADA violations and did nothing else while inside the Store. Although Whitaker takes issue with the merits of those findings, he does not meaningfully contest that they

20

satisfy all the requirements for issue preclusion.[5]  Nor could he. Judge Shaller's findings constitute final adjudications, the issues were actually litigated and necessarily decided, and the parties in the two actions are identical.  (See *DKN Holdings, supra*, 61 Cal.4th at p. 825.)  Moreover, giving preclusive effect to Judge Shaller's findings would serve the policies underlying the issue preclusion doctrine.  (See *Lucido, supra*, 51 Cal.3d at pp. 342–343.)  It would preserve judicial resources and relieve Landis of the burden and expense of relitigating issues the parties have already tried.  It also would avoid the possibility of conflicting findings by the trial court in this case and Judge Shaller in the underlying action.

Accordingly, under the doctrine of issue preclusion, Judge Shaller's findings concerning Whitaker's intentions and actions inside the Store are conclusive in this action on the same issues. In other words, the findings conclusively establish that Whitaker entered the Store with the sole purpose of scoping it out for ADA violations and did nothing else while inside the Store.

Although we agree with Landis that Judge Shaller's findings are entitled to preclusive effect, we do not agree that they conclusively prove Whitaker lacked probable cause.  Issue preclusion applies only to issues that were actually litigated and decided in the prior case.  (*DKN Holdings, supra*, 61 Cal.4th at p. 824.)  Judge Shaller did not consider whether Whitaker had probable cause to pursue his Unruh Act claim.  Therefore,

---

[5]  Despite denying that he wants to relitigate the underlying case, Whitaker devotes several pages of his brief on appeal to challenging the merits of Judge Shaller's findings.  The time to make those arguments was on appeal of Judge Shaller's judgment, which Whitaker chose to forgo.

21

his findings do not conclusively resolve that issue. (See *Key, supra*, 34 Cal.App.5th at p. 539.)

Nevertheless, Judge Shaller's findings are sufficient to raise triable issues of fact. Although the existence of probable cause is a legal issue, it depends on the defendant's knowledge, which is an issue of fact. (See *Sheldon Appel, supra*, 47 Cal.3d at pp. 880–881.) Judge Shaller's findings are relevant to that factual issue. Because the findings concern Whitaker's own mental state and actions, it is reasonable to infer Whitaker was aware of the underlying facts when he brought his Unruh Act claim. Indeed, it is difficult to conceive of how Whitaker could not have been aware of his intentions for entering the Store and his actions while inside it. Accordingly, based on Judge Shaller's findings, a reasonable trier of fact could conclude Whitaker pursued his Unruh Act claim with knowledge that he entered the Store with the sole purpose of scoping it out for ADA violations and did nothing else while inside the Store.

Turning to the legal issue, no reasonable attorney with that knowledge would have believed the Unruh Act claim was tenable. As Whitaker seems to concede, Judge Shaller's findings refute an essential element of his claim: that the alleged ADA violation denied him "full and equal access to" the Store. (§ 55.56, subd. (a).) No reasonable attorney who knows an essential element of a claim is lacking would believe the claim is tenable. (See *Sheldon Appel, supra*, 47 Cal.3d at p. 881 [a prospective plaintiff lacks probable cause if his claim alleges facts he knows are untrue]; *Soukup, supra*, 39 Cal.4th at p. 292 [a litigant lacks probable cause " 'if he relies upon facts which he has no reasonable cause to believe to be true' "].) Accordingly, Judge Shaller's findings are sufficient to raise triable issues of fact

on whether Whitaker lacked probable cause to pursue the Unruh Act claim.

Whitaker contends, regardless of Judge Shaller's findings, he conclusively established he had probable cause to pursue his Unruh Act claim. Whitaker points to his own declarations and trial testimony, in which he asserted he entered the Store to shop, but the height of the sales counter deterred him from making a purchase. Whitaker also points to photographs he purportedly took of the sales counter. According to Whitaker, a reasonable attorney presented with his testimony and the photographs would believe an Unruh Act claim was tenable. He contends the fact that Judge Shaller was not persuaded by his evidence is irrelevant since Judge Shaller decided the ultimate merits of his claim, not whether he had probable cause to pursue it.

Contrary to Whitaker's contentions, his evidence does not conclusively establish probable cause. The photographs may have provided probable cause of an ADA violation, but they did not support the other elements of an Unruh Act claim. Whitaker's testimony did address those elements. However, Landis submitted evidence—in the form of Judge Shaller's findings—disputing much of it. Because those disputes concern matters within Whitaker's personal knowledge, a reasonable trier of fact could infer Whitaker fabricated his declarations and trial testimony. No reasonable attorney would believe a claim is tenable if it relies on fabricated evidence to establish an essential element. (See *Soukup, supra*, 39 Cal.4th at p. 292 [a litigant lacks probable cause " 'if he relies upon facts which he has no reasonable cause to believe to be true' "]; see also *Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 820

23

[a favorable interim ruling in the underlying action does not establish probable cause to bring the action if the ruling was "obtained by fraud or perjury"].)  Whether Whitaker actually fabricated the testimony is a factual issue.  Accordingly, at the very least, there are triable issues of fact on whether Whitaker's evidence provided probable cause for his claim.

Whitaker suggests applying issue preclusion in malicious prosecution actions would lead to unwanted results.  According to Whitaker, it would mean a party who loses in the underlying action necessarily would be found to have lacked probable cause to bring that action.  We disagree.

The doctrine of issue preclusion applies only to issues that were actually litigated and decided in the prior case.  (*DKN Holdings, supra*, 61 Cal.4th at p. 824.)  Therefore, an underlying court's findings would conclusively establish a party lacked probable cause only if the court decided that specific issue.  (See *Key, supra*, 34 Cal.App.5th at p. 539.)  A court's other findings might be relevant to the probable cause issue, but only if they concern a party's personal knowledge of the facts underlying a claim.

There are many circumstances where a court's findings would not be relevant to a party's knowledge.  In this case, for example, Judge Shaller found Whitaker failed to prove the sales counter violated the ADA, in part, because he did not present expert testimony on the issue.  That finding suggests nothing about Whitaker's knowledge of the facts underlying his claim.  Therefore, it is irrelevant to whether Whitaker had probable cause to pursue it.

In contrast, Judge Shaller's findings regarding Whitaker's intentions and actions while inside the Store concern matters

completely within Whitaker's personal knowledge. Therefore, they support inferences regarding Whitaker's knowledge when he pursued the Unruh Act claim. Because that knowledge concerns facts that refute an essential element of Whitaker's Unruh Act claim, Judge Shaller's findings support a conclusion that Whitaker lacked probable cause to pursue the claim.

For similar reasons, Judge Shaller's findings also support a conclusion that Whitaker acted with malice. A lack of probable cause alone does not establish malice. (*Padres L.P. v. Henderson* (2003) 114 Cal.App.4th 495, 522.) However, malice may be "inferred when a party knowingly brings an action without probable cause." (*Ibid.*; see *Maleti v. Wickers* (2022) 82 Cal.App.5th 181, 223–224 [malice can be inferred from evidence that the defendant knowingly brought or maintained an action without probable cause].)

Landis submitted sufficient evidence from which a reasonable trier of fact could conclude Whitaker knew his Unruh Act claim lacked probable cause. In both federal and state court, Whitaker filed declarations under penalty of perjury asserting he went to the Store "to shop." Whitaker provided more detailed testimony at trial, claiming he was shopping for a particular board game. As we discussed above, Judge Shaller conclusively found Whitaker entered the Store solely to look for ADA violations and did nothing else while inside the Store. Those findings support an inference that Whitaker knowingly and repeatedly gave false testimony concerning his intentions and actions inside the Store. From this, a reasonable trier of fact could infer Whitaker knew his actual intentions and actions were fatal to his claim. Whitaker's history of litigating construction-related accessibility claims provides additional support for

that inference.[6]  On this record, a reasonable trier of fact could conclude Whitaker knew his claim lacked merit and brought it for an improper purpose, such as "forcing a settlement which has no relation to the merits of the claim." (*Albertson v. Raboff* (1956) 46 Cal.2d 375, 383.)  Accordingly, Landis met its burden to raise triable issues of fact as to the malice element of its malicious prosecution claim against Whitaker.

To summarize, Judge Shaller's factual findings concerning Whitaker's intentions and actions inside the Store are entitled to preclusive effect under the doctrine of issue preclusion.[7]  From those findings, a reasonable trier of fact could conclude Whitaker knew he entered the Store solely to look for ADA violations and did nothing else while inside the Store.  Because those facts refute an essential element of Whitaker's Unruh Act claim, Judge Shaller's findings are sufficient to support a conclusion that Whitaker lacked probable cause to bring the claim.  Judge Shaller's findings also support a conclusion that Whitaker knew his claim lacked probable cause when he brought it.  Accordingly, a reasonable trier of fact could infer he brought the claim for an improper purpose.  Thus, Landis met its burden to raise triable issues of fact on every challenged element of its malicious

---

[6]      In his appellate brief, Whitaker states "ADA/Unruh testers"—like himself—are "well aware" of the law and, "therefore, intend to shop or make small purchases while visiting stores or facilities in order to perfect their standing."

[7]      Because these findings are sufficient to meet Landis's burden, we express no opinion on whether Judge Shaller's other findings are subject to issue preclusion.

prosecution claim, and the trial court erred in granting Whitaker's motion for summary judgment.[8]

4.    ***The trial court properly granted summary judgment for the Attorneys***

The parties do not dispute that the Attorneys met their initial burden to show Landis cannot prove they lacked probable cause to pursue the Unruh Act claim. The Attorneys presented undisputed evidence showing they pursued the claim based on information from Whitaker, an investigator's report, and photographs of the sales counter. According to Handy, Whitaker said he entered the Store intending to shop, but an inaccessible sales counter dissuaded him from making a purchase. Handy asserted he believed Whitaker was telling the truth. He also confirmed parts of Whitaker's account by sending an investigator to the Store to measure the sales counter and take pictures.

The information Whitaker and the investigator provided the Attorneys, if true, was sufficient to support a claim under the Unruh Act. Accordingly, the Attorneys met their initial burden to show they had probable cause to pursue the claim. (See *Antounian v. Louis Vuitton Malletier* (2010) 189 Cal.App.4th 438, 449 ["[p]robable cause exists if the claim is legally sufficient and can be substantiated by competent evidence"].) Therefore, the burden shifted to Landis to create triable issues of fact.

Landis argues it met its burden by submitting Judge Shaller's findings, which are binding on the Attorneys. Landis

---

8    Because we conclude Judge Shaller's findings provide sufficient evidence to survive summary judgment, we need not consider the other evidence Landis submitted in opposition to Whitaker's motion.

also points to evidence it submitted refuting Whitaker's version of events, including the transcript of the underlying trial and declarations from an employee and its owner. Landis suggests its evidence was sufficient to show the Attorneys lacked probable cause for the same reasons it was sufficient to show Whitaker lacked probable cause. We disagree.

As we discussed above, the Unruh Act claim was premised on factual allegations that were within Whitaker's personal knowledge. Therefore, evidence refuting those factual allegations —such as Judge Shaller's findings concerning Whitaker's intent and actions inside the Store—is relevant to Whitaker's knowledge. Specifically, it supports an inference that Whitaker knew facts that made his claim untenable.

Landis's evidence does not lead to similar inferences concerning the Attorneys' knowledge. Unlike Whitaker, the Attorneys did not bring the claim based on matters within their personal knowledge. Instead, they relied primarily on information Whitaker told them. Landis submitted ample evidence showing Whitaker's information was false. However, it points to no evidence showing the Attorneys knew, or should have known, that fact. Absent such evidence, Landis has not raised triable issues of fact as to whether the Attorneys lacked probable cause.

Landis contends the Attorneys' knowledge that Whitaker conveyed false information can be inferred from their history of representing Whitaker in hundreds of similar lawsuits. Landis suggests some of those lawsuits must have been frivolous, but it points to no evidence in the record to support that assertion.

We decline to draw such an inference solely based on the number of cases the Attorneys and Whitaker have pursued together.[9]

On the record before us, Landis has not met its burden to raise triable issues of fact concerning whether the Attorneys had probable cause. A lack of probable cause is a necessary element of a malicious prosecution claim. Accordingly, the trial court properly granted the Attorneys' motion for summary judgment.[10]

---

[9] For the first time in its reply brief, Landis argues the Attorneys lacked probable cause once the federal court granted partial summary judgment, and they are presumed to share Whitaker's knowledge of the true facts. Landis forfeited these arguments by failing to raise them in its opening brief. (See *Christoff v. Union Pacific Railroad Co.* (2005) 134 Cal.App.4th 118, 125 ["an appellant's failure to discuss an issue in its opening brief forfeits the issue on appeal"].) It also forfeited the arguments by failing to support them with a single citation to the record or relevant legal authority. (See *Keyes v. Bowen* (2010) 189 Cal.App.4th 647, 655 [an appellant must present "legal authority on each point made and factual analysis, supported by appropriate citations to the material facts in the record; otherwise, the argument may be deemed forfeited"].) Accordingly, we decline to consider them.

[10] Because Landis failed to raise triable issues of fact on the probable cause element, we need not consider whether it raised triable issues of fact on the malice element.

## DISPOSITION

We reverse the judgment as to Whitaker and affirm as to Handy and Potter Handy, LLP. On remand, the court shall vacate its order granting Whitaker's motion for summary judgment and enter a new order denying the motion. The parties shall bear their own costs on appeal.

**CERTIFIED FOR PUBLICATION**


EGERTON, J.

We concur:



EDMON, P. J.



HANASONO, J.

30